THOMAS LEON REID, SR. and DORIS REID, Plaintiffs v. JOHN F. AYERS, III,
TIMOTHY G. SELLERS and DELANEY & SELLERS, PA, Defendants

No. COA99-790

(Filed 6 June 2000)

## 1. Collateral Estoppel and Res Judicata— collateral estoppel—issue of first impression—unfair debt collection practices

Although defendants assert that collateral estoppel bars plaintiffs' claim for unfair debt collection practices premised upon defendants having sought too much in attorney fees when plaintiffs never contested the amount of attorney fees recoverable in the first case, the Court of Appeals chose not to apply the doctrine in this situation because the issue is one of first impression.

## 2. Consumer Protection— Debt Collection Act—state act—no action against attorneys

Although plaintiffs' complaint met the three threshold requirements to state a claim under The North Carolina Debt Collection Act in Chapter 75, Article 2 of the General Statutes, this Act does not allow a cause of action against attorneys engaging in collecting debts on behalf of their clients because: (1) the three generalized requirements found in N.C.G.S. § 75-1.1 must also be met, and the "learned profession" exemption operates to invalidate plaintiffs' claim since defendants, a law firm and its attorneys, are members of a learned profession; and (2) the exemption applies anytime an attorney or law firm is acting within the scope of the traditional attorney-client role, but not when the attorney or law firm is engaged in the entrepreneurial aspects of legal practice that are geared more towards their own interests as opposed to the interests of their clients.

Appeal by plaintiffs from order entered 8 March 1999 by Judge L. Oliver Noble in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 March 2000.

*Hewson Lapinel Owens, PA, by H.L. Owens, for plaintiff-appellants.*

*Dean & Gibson, L.L.P., by Barbara J. Dean and Rodney A. Dean, for defendant-appellees.*

LEWIS, Judge.

This appeal involves a question of first impression in North Carolina. Specifically, we are called upon to address whether the North Carolina Debt Collection Act (NCDCA) contained within Chapter 75 of our General Statutes allows for a cause of action against attorneys engaged in collecting debts on behalf of their clients. We find that it does not and therefore affirm the trial court's order dismissing plaintiff's claim.

Plaintiffs are residents of a planned development community in Mecklenburg County known as Park Lake Recreation Association ("Park Lake"). Defendants serve as legal counsel for Park Lake. During 1995, plaintiffs became delinquent on certain assessments and association dues they owed to Park Lake. As of 30 November 1995, this delinquency amounted to $478. In attempting to collect the money owed their clients, defendants informed plaintiffs that they would also have to pay attorney's fees in the amount of $996 in order to fully satisfy their account. This was well in excess of the amount permitted under our statutes. See N.C. Gen. Stat. § 6-21.2(2) (1999) (limiting the amount of recoverable attorney's fees to 15% of the obligation owed); McGinnis Point Owners Ass'n v. Joyner, 135 N.C. App. 752, 757, 522 S.E.2d 317, 320 (1999) (applying this statutory limit in the context of homeowners' assessments). Nonetheless, a default judgment was eventually entered against plaintiffs, ordering them to pay the $478 delinquency plus $996 in attorney's fees. Plaintiffs eventually paid off the entire amount owed, but not before their home was foreclosed and they were forced to repurchase it for an additional $4000.

Plaintiffs thereafter filed this action, claiming that defendants engaged in unfair debt collection practices in violation of the NCDCA by attempting to collect attorney's fees well in excess of the amount legally permitted. Their complaint also alleged claims for infliction of emotional distress, fraud, and civil conspiracy. In an order entered 8 March 1999, the trial court dismissed all claims asserted against defendants pursuant to N.C.R. Civ. P. 12(b)(6). Plaintiffs have only appealed the dismissal of their unfair debt collection claim, and thus our review is limited to a consideration of the validity of that claim.

[1] At the outset, defendants claim this action is barred by principles of collateral estoppel. Specifically, they maintain that plaintiffs cannot now assert a claim for unfair debt collection practices premised upon defendants having sought too much in attorney's fees when

**REID v. AYERS**

[138 N.C. App. 261 (2000)]

plaintiffs never contested the amount of attorney's fees recoverable in the first case. However, even if the formal requirements of collateral estoppel have all been satisfied here, *see generally King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973) (setting forth the four requirements), we choose not to apply the doctrine in this situation because the issue before us is one of first impression. *See generally Tar Landing Villas v. Town of Atlantic Beach*, 64 N.C. App. 239, 244, 307 S.E.2d 181, 185 (1983) ("When the issue [for purposes of collateral estoppel], however, as in this case, involves the scope and formulation of a law never before addressed by an appellate court in this State, we believe that our duty to develop the law outweighs the resulting burden on [defendants]."), *disc. review denied*, 310 N.C. 156, 311 S.E.2d 296 (1984). Accordingly, we reject defendants' argument and proceed to the merits of this appeal.

[2] The North Carolina Debt Collection Act is contained in Chapter 75, Article 2 of our General Statutes. In it, our legislature has proscribed certain activities in the area of debt collection. N.C. Gen. Stat. §§ 75-51 to -55 (1999). But before a claim for unfair debt collection can be substantiated, three threshold determinations must be satisfied. First, the obligation owed must be a "debt"; second, the one owing the obligation must be a "consumer"; and third, the one trying to collect the obligation must be a "debt collector." N.C. Gen. Stat. § 75-50(1)-(3). Plaintiff's complaint satisfies all three here.

For purposes of the NCDCA, our legislature has defined "debt" as "any obligation owed or due or alleged to be owed or due from a consumer." N.C. Gen. Stat. § 75-50(2). We conclude that the homeowners' association dues and assessments in this case satisfy this definition. In arriving at this conclusion, we have found cases construing the parallel federal statute to be particularly instructive, though not binding.

Under the federal Fair Debt Collection Practices Act ("FDCPA"), "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C.A. § 1692a(5) (1998). The Third Circuit was the first to construe this definition. In *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir. 1987), that court concluded that, to be a debt, there must be an actual extension of credit plus a deferred payment obligation, i.e. a "transaction in which a consumer is offered or extended the right to

acquire" money or property. *Id.* at 1168-69. Several courts thereafter used *Zimmerman's* "extension of credit" requirement to conclude that condominium or homeowners' association dues and assessments are not debt because the unit owner is required to pay the dues and assessments up front, before the association provides services in return. *See, e.g., Azar v. Hayter*, 874 F. Supp. 1314 (N.D. Fla. 1995) (condominium association fees); *Nance v. Petty, Livingston, Dawson, & Devening*, 881 F. Supp. 223 (W.D. Va. 1994) (homeowners' association dues); *see also Bryan v. Clayton*, 698 So. 2d 1236 (Fla. Dist. Ct. App. 1997) (holding that condominium association fees are not debt under Florida state law).

*Zimmerman's* extension of credit requirement, however, has come under sharp criticism. As the Seventh Circuit articulated:

> Because the statute's definition of a "debt" focuses on the trans-action creating the obligation to pay, it would seem to make little difference under that definition that unit owners generally are required to pay their assessments first, before any goods are pro-vided by the association.

*Newman v. Boehm, Pearlstain & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997). The *Newman* court thus concluded that homeowners' association assessments are indeed debt under the federal act. *Id.* at 481-82. Since then, nearly every court, state or federal, that has con-sidered the issue has concluded that association dues, assessments, and rent are properly classified as debt. *See, e.g., Romea v. Heiberger & Assocs.*, 163 F.3d 111 (2d Cir. 1998); *Ladick v. Gemert*, 146 F.3d 1205 (10th Cir. 1998); *Garner v. Kansas*, No. 98-1274, 1999 WL 262100 (E.D. La. 1999); *Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp. 2d 932 (D. Ariz. 1999); *Taylor v. Mount Oak Manor Homeowners Ass'n*, 11 F. Supp. 2d 753 (D. Md. 1998); *Thies v. Law Offices of William A. Wyman*, 969 F. Supp. 604 (S.D. Cal. 1997); *Loigman v. Kings Landing Condominium Ass'n*, 734 A.2d 367 (N.J. Super. Ct. Ch. Div. 1999). *But see Barstow Road Owners, Inc. v. Billing*, 687 N.Y.S.2d 845 (Dist. Ct. 1998) (holding that back rent is not debt under New York state law). We agree that an extension of credit requirement under our state act would be too restrictive for the purposes the act is designed to accomplish. Accordingly, we conclude that homeowners' association dues and assessments are debt within the meaning of the NCDCA.

The second threshold requirement under our act is that the one owing the obligation must be a "consumer." Our legislature has defined consumer as "any natural person who has incurred a debt or

alleged debt for personal, family, household or agricultural purposes." N.C. Gen. Stat. § 75-50(1) (1999). Plaintiffs here clearly meet this definition, as they have incurred these assessments for family or household purposes.

Finally, the NCDCA requires that the one trying to collect the obligation owed be a "debt collector," which is defined as "any person engaging, directly or indirectly, in debt collection from a consumer except those persons subject to the provisions of Article 70, Chapter 58 of the General Statutes [regarding collection agencies]." N.C. Gen. Stat. § 75-50(3). We point out that, in this regard, our state act is much broader than the federal counterpart. The federal definition of "debt collector" focuses on whether the *principal purpose* of the business is debt collection or whether debt collection is *regularly* done in that business. 15 U.S.C.A. § 1692a(6) (1998). In this regard, attorneys and law firms can be debt collectors for purposes of the FDCPA only if regularly engaged in that type of practice. *Heintz v. Jenkins*, 514 U.S. 291, 294, 131 L. Ed. 2d 395, 399 (1995). Because there is no regularity or primary purpose limitation in our act, we conclude that law firms and attorneys (such as defendants here) who attempt to collect debts on behalf of their clients are debt collectors under the NCDCA, regardless of how infrequently they perform that type of work. We thus conclude that plaintiffs' complaint has met all three threshold requirements.

Satisfaction of the threshold requirements of Article 2, however, does not end our inquiry. Article 2 only contains the specific requirements in the context of debt collection. After these are satisfied, a plaintiff's claim then must satisfy the more generalized requirements of all unfair or deceptive trade practice claims, which are contained in Article 1 (in particular, section 75-1.1). Although our legislature does not specifically state that Article 2 is subject to the more generalized requirements of section 75-1.1, we conclude that was their intent. The final section in Article 2 states:

> The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article. Notwithstanding the provisions of G.S. 75-15.2 and G.S. 75-16, in private actions or actions instituted by the Attorney General, civil penalties in excess of two thousand dollars ($2,000) shall not be imposed, nor shall damages be trebled for any violation under this Article.

N.C. Gen. Stat. § 75-56 (1999). By specifically referencing the generalized proscription in section 75-1.1, we conclude the legislature intended that Article 2 be limited by the same requirements applicable to those proscriptions. Furthermore, had our legislature not intended for Article 2 to be governed by the generalized provisions of Article 1, it would not have needed to refer to Article 1's allowance for treble damages when limiting the remedy for Article 2 violations to $2000. Thus, we conclude that once the three threshold requirements in section 75-50 are satisfied, a claim for unfair debt collection practices must then meet the three generalized requirements found in section 75-1.1: (1) an unfair act (2) in or affecting commerce (3) proximately causing injury. *See First Atl. Mgmt. Corp. v. Dunlea Realty Co.,* 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998).

We need not address all three of these requirements, however, as we find the "in or affecting commerce" requirement to be dispositive here. Our legislature has defined this requirement in the following manner: " '[C]ommerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b) (1999). We conclude that the "learned profession" exemption provided for in the second half of this definition operates to invalidate plaintiffs' claim here.

In order for the learned profession exemption to apply, a two-part test must be satisfied. First, the person or entity performing the alleged act must be a member of a learned profession. Noel L. Allen, *North Carolina Unfair Business Practice* § 14-3(c) (1995) (citing 47 N.C. Op. Att'y Gen. 118, 119-20 (1977)). Second, the conduct in question must be a rendering of professional services. *Id.* With respect to the first part of the test, although our legislature does not specifically define what professions are considered "learned," we note that the practice of law has traditionally been considered a learned profession, as indeed it is. *Id.* § 14-3(b). Furthermore, this Court has recently applied the exemption in the context of a law firm. *Sharp v. Gailor,* 132 N.C. App. 213, 217, 510 S.E.2d 702, 704 (1999). Thus, we conclude that defendants, being a law firm and its attorneys, are members of a learned profession.

We conclude defendants meet the second part of the test as well because they were attempting to collect moneys that were owed to their clients. In doing so, they were rendering a professional service that is often carried out by law firms or attorneys. Plaintiffs attempt to distinguish debt collection from other aspects of an attorney's

work, such as drafting pleadings, negotiating settlements, and preparing contracts, arguing that only the latter should fall within the exemption. We disagree.

In *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 293 S.E.2d 901, *disc. review denied*, 307 N.C. 127, 297 S.E.2d 399 (1982), this Court entertained a similar argument in the context of medical professionals. In that case, the hospital amended its by-laws to eliminate all staff privileges for podiatrists working at the hospital. *Id.* at 422-24, 293 S.E.2d at 907-08. Plaintiffs, two licensed podiatrists, then sued the hospital, alleging that the amendment came as the result of a conspiracy and other unfair or deceptive acts. *Id.* at 416, 293 S.E.2d at 903. In holding that the learned profession exemption applied, this Court concluded that the exemption could not be strictly separated along purely administrative versus purely medical lines. *Id.* at 446-47, 293 S.E.2d at 920-21. Rather, the crucial inquiry was whether the administrative functions were a necessary part of the medical services provided. *Id.* Because staff privileges are an important quality control component, the *Cameron* Court held that the grant or denial of those privileges was a necessary part of assuring quality medical services. *Id.* at 447, 293 S.E.2d at 921.

We feel the same type of analysis can be applied in the context of the practice of law. Debt collection, along with the collection of any attorney's fees incurred as a penalty, is a necessary part of the practice of debtor-creditor law. Because defendants were engaged in that very practice here, they were rendering a professional legal service. Accordingly, their acts fall within the learned profession exemption.

We point out that not all services performed by attorneys will fall within the exemption. Advertising is not an essential component to the rendering of legal services and thus would fall outside the exemption. *See* 47 N.C. Op. Att'y Gen. 118, 120 (1977) ("Advertising by an attorney is a practice apart from his actual performance of professional services. Indeed, it is not a professional practice at all, but rather a commercial one."). Likewise, the exemption would not encompass attorney price-fixing. *Id.* Although no bright line exists, we think that the exemption applies anytime an attorney or law firm is acting within the scope of the traditional attorney-client role. It would not apply when the attorney or law firm is engaged in the entrepreneurial aspects of legal practice that are geared more towards their own interests, as opposed to the interests of their clients. *See generally Short v. Demopolis*, 691 P.2d 163, 168

(Wash. 1984) (en banc) (espousing a demarcation between "the actual practice of law" and "the entrepreneurial aspects of legal practice"). Because we conclude that defendants fall within the learned profession exemption, we hold that plaintiffs' claim is legally insufficient.

In closing, we believe the tactics used by defendants in trying to collect these delinquent assessments were indefensible, whether done in ignorance of, or disdain for, the law. Our statutes clearly limited the amount of recoverable attorney's fees to $71.70 (15% of the $478 owed), thereby entitling defendants and their clients to a total recovery of $549.70. (We note that the provisions in newly-enacted Chapter 47F of our General Statutes are not applicable here.) Notwithstanding this statutory mandate, however, defendants refused to accept any payments less than $1374 from plaintiffs, two-and-a-half times that which was legally owed. These tactics, however wrongly employed here, do not constitute a legally valid claim under the North Carolina Debt Collection Act.

Affirmed.

Judges JOHN and EDMUNDS concur.