**DIRECTV, INC., Plaintiff,**

v.

**David CEPHAS, Defendant.**

**No. 1:02 CV 00766.**

United States District Court,
M.D. North Carolina.

Dec. 2, 2003.

Leslie C. O'Toole, Ellis & Winters, LLP, Raleigh, NC, for plaintiff/counter–defendant.

Michael A. Kornbluth, Durham, NC, for defendant/counter–claimant.

*MEMORANDUM OPINION*
*and ORDER*

OSTEEN, District Judge.

This matter is now before the court on Plaintiff DIRECTV, Inc.'s ("DIRECTV") Motion to Dismiss Defendant David Cephas's ("Cephas") counterclaims. Cephas's counterclaims are based on the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen.Stat. §§ 75–50 to – 56, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDT-PA"), N.C. Gen.Stat. § 75–1.1 *et seq.* This court has jurisdiction over these claims

based on supplemental jurisdiction asserted pursuant to 28 U.S.C. § 1367.

## I. BACKGROUND

DIRECTV is a business engaged in the nationwide distribution of satellite television broadcasts. The signals are scrambled when transmitted so that only subscribing customers with legal access to DIRECTV receivers may unscramble and view the broadcasts. However, equipment is available which can circumvent DIRECTV's signal-scrambling technology. Users of this equipment may view DIRECTV's programming without subscribing to DIRECTV's service and without making payment to the company.

Through the recent prosecution of USA Card Cleaners, a company that allegedly sold equipment designed to steal DIRECTV's satellite broadcasts, DIRECTV obtained a number of sales records and tracked the alleged buyers of the illegal equipment. DIRECTV has engaged in ongoing civil prosecution of these individuals based on the information gained from USA Card Cleaners's records.

Cephas is among the individuals that DIRECTV has accused of purchasing and using illegal signal theft equipment. Cephas became aware of these allegations when he received a letter from DIRECTV stating that his name appeared in USA Card Cleaners's business records, accusing him of violating various federal statutes by possessing and/or using signal theft equipment, and announcing that litigation could be pursued against him. This demand letter, dated June 17, 2002, stated that DIRECTV would settle the matter if Cephas surrendered his illegal equipment, promised in writing not to obtain similar equipment in the future, and paid an unspecified monetary sum.

When Cephas replied with a letter denying these accusations, DIRECTV issued a second letter, dated July 1, 2002, stating that Cephas would be given 10 additional days to pursue a settlement with the company before it retained counsel and filed suit. Cephas did not respond within this 10–day period. On September 12, 2002, DIRECTV filed this action alleging various causes of action under federal and state law. Cephas answered on November 7, 2002, counterclaiming for unfair and deceptive practices under the NCDCA, N.C. Gen.Stat. §§ 75–50 to –56, and the UDTPA, N.C. Gen.Stat. § 75–1.1 *et seq.* DIRECTV now moves to dismiss these counterclaims, and Cephas moves to amend his response to DIRECTV's motion to dismiss.

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of pleadings, but do not seek to resolve disputes surrounding the facts, the merits of claims, or the applicability of any defenses. *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the [party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the pleading must be "liberally construed" in the light most favorable to the non-moving party and allegations made therein are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969).

## III. ANALYSIS

Since both of Cephas's counterclaims are based on North Carolina law, this court must apply the jurisprudence of

the North Carolina Supreme Court when deciding this matter. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir.2002). If the North Carolina Supreme Court has not rendered a decision directly on point, then this court must predict how the North Carolina Supreme Court would rule if presented with the issue. *See Private Mortgage*, 296 F.3d at 312. "In so predicting ... the state's intermediate appellate court [decisions], 'constitute the next best indicia of what state law is. . . .'" *Id.* (quoting *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992)). As such, this court will look to the rationale proscribed by both the North Carolina Supreme Court and the North Carolina Court of Appeals in rendering its decision.

### A. Defendant Cephas's Counterclaim for Unfair and Deceptive Debt Collection Practices

■ The North Carolina Debt Collection Act prohibits unfair, deceptive, or fraudulent practices in the collection of debts. *See* N.C. Gen.Stat. § 75–51. To state a claim under this act, a claimant must establish three elements: (1) the alleged obligation is a "debt," (2) the claimant owing the obligation is a "consumer," and (3) the party attempting to collect the obligation is a "debt collector." *Reid v. Ayers*, 138 N.C.App. 261, 263, 531 S.E.2d 231, 233 (2000). The NCDCA defines debt as "any obligation owed or due or alleged to be owed or due from a consumer," and

defines consumer to mean "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes." N.C. Gen.Stat. § 75–50(1), (2).

■ DIRECTV asserts that its letters are outside the scope of the NCDCA because an alleged theft does not constitute a debt as defined by the statute. North Carolina courts have not considered whether alleged theft creates a debt within the meaning of the NCDCA. However, in its past attempts to define debt under the NCDCA, the North Carolina Court of Appeals "found cases construing the parallel federal statute to be particularly instructive." *Reid*, 138 N.C.App. at 263, 531 S.E.2d at 233 (looking to federal cases that considered the definition of debt under the Federal Debt Collection Practices Act and concluding that homeowners' association dues fall within the NCDCA definition of debt). Thus, in determining whether an alleged theft creates a debt within the reach of the NCDCA, this court will look to federal courts that have considered the same question under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.

Several federal courts have determined that alleged theft does not fall within the reach of the FDCPA. In arriving at these conclusions, the courts have focused on the FDCPA's definition of "debt" as an obligation "arising out of a transaction."[1] *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1372 (11th Cir.1998) (holding that torts are not business dealings, therefore, they are not transactions under the FDCPA and cannot create a debt within the meaning of the statute); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163,

---

1. The Federal Debt Collection Practices Act defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

1168 (3rd Cir.1987) (finding that any payment obligation arising from the theft of television signals was outside the reach of the FDCPA because potential tort liability was not a transaction as defined by the statute); *Coretti v. Lefkowitz,* 965 F.Supp. 3, 5 (D.Conn.1997) ("A claim arising out of an alleged theft does not constitute a 'debt' under the FDCPA. '[A]lthough a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions....' ") (citation omitted) (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1326 (7th Cir. 1997)); *Shorts v. Palmer,* 155 F.R.D. 172, 174–75 (S.D.Ohio 1994) (holding that an obligation to pay arising out of civil liability for an alleged theft is not a debt and does not flow from the kind of transaction contemplated by the FDCPA).

The FDCPA defines "debt" as an obligation "arising out of a transaction," while the NCDCA defines debt as *"any* obligation owed or due or alleged to be owed or due from a consumer." 15 U.S.C. § 1692a(5); N.C. Gen.Stat. § 75–50(2) (emphasis added). The state statute does not expressly require that a transaction precede the creation of a debt. Although the NCDCA's definition of debt is broad, it does not follow that the North Carolina General Assembly intended the term to encompass conduct that is wholly outside the ordinary meaning of the word. *See DIRECTV, Inc. v. Callahan,* No. 5:02–CV–741–BO(3), slip op. at 4 (E.D.N.C. Apr. 2, 2003) (determining that tort damage is not a debt under the NCDCA because debt under that statute must extend from "some kind of business dealing or other consensual obligation"); *DIRECTV, Inc. v. Breedlove,* No. 5:02–CV–679–BR3, slip op. at 7 (E.D.N.C. Mar. 18, 2003) (finding that "North Carolina's definition of 'debt' [under the NCDCA] is not broad enough to encompass damages sought as a result of tortious or criminal conduct"). North Carolina courts' limited treatment of the term and reliance on interpretations of the FDCPA indicate that, if presented with the question, these courts would find alleged theft is not encompassed by the NCDCA's definition of debt.

There is simply no indication that North Carolina courts would extend the definition of debt to include obligations arising from alleged tortious or criminal conduct; to do so would imprudently expand the scope of the NCDCA's consumer protection measures.[2] Since debt under the NCDCA does not include alleged theft, Cephas is unable to assert a claim under that statute as a matter of law. *See Reid,* 138 N.C.App. at 263, 531 S.E.2d at 233. Accordingly, the court will grant DIRECTV's motion to dismiss Cephas's counterclaim for unfair and deceptive debt collection practices pursuant to the NCDCA.

**B. Defendant Cephas's Counterclaim for Unfair and Deceptive Trade Practices**

Cephas's second counterclaim alleges a violation of the Unfair and Deceptive

---

**2.** This conclusion is supported not only by interpretations of the FDCPA, but also by the policies behind both the FDCPA and the NCDCA. The purpose of both statutes is to protect consumers from unfair or deceptive practices by debt collectors. This protection may be needed because the consumers have entered or are alleged to have entered into a consensual obligation. Having already agreed to owe this debt, consumers may feel beholden to the claiming party. It is the consensual nature of this obligation that creates a greater risk of susceptibility to the high-pressure tactics these statutes prohibit. As a matter of public policy, the FDCPA and the NCDCA simply were not designed to afford the same protections to individuals whose alleged obligations arise from tortious or criminal conduct.

Trade Practices Act. N.C. Gen.Stat. § 75–1.1. The UDTPA prohibits the general use of unfair or deceptive practices in commerce. The NCDCA (discussed above) is found at Article 2 of the UDTPA and applies only when unfair and deceptive conduct occurs in the specific context of debt collection. *Id.* §§ 75–51 to –55. If the abusive conduct alleged pertains only to debt collection, the NCDCA provides a claimant's exclusive remedy. *Id.* § 75–56. Claims can only be asserted under the UDTPA if there is some abusive conduct alleged to have occurred outside the realm of debt collection.

■ DIRECTV argues that it engaged only in debt collection activities and, as such, it can only be subject to liability under the NCDCA and not also liable under the UDTPA generally. However, DIRECTV has also argued that its conduct did not fall under the NCDCA because any remedy owed to DIRECTV is not a debt within the meaning of the statute. This court agreed and found, as discussed above, that any obligation due from Cephas would not be a debt under the NCDCA. This finding prevents DIRECTV from now arguing that it did engage in "debt collection" and forecloses DIRECTV's attempt to use the NCDCA's exclusive remedy protection as a shield against liability from the UDTPA.

In short, DIRECTV's actions fall outside the reach of the NCDCA because the matter does not involve debt collection. However, DIRECTV's acts may still fall within the UDTPA's ban on abusive practices because that statute applies to commerce generally. As such, Cephas may be able to advance a claim under the UDTPA alone.

■ To state a claim under the UDTPA, Cephas must show: (1) DIRECTV committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) Cephas was injured by that act or practice.

*First Atl. Mgmt. Corp. v. Dunlea Realty Co.,* 131 N.C.App. 242, 252, 507 S.E.2d 56, 63 (1998) (citing *Canady v. Mann,* 107 N.C.App. 252, 260, 419 S.E.2d 597, 602 (1992)). Cephas must also establish that he " 'suffered actual injury as a proximate result of [DIRECTV's] misrepresentations' or unfair conduct." *Id.* at 252, 507 S.E.2d at 63 (quoting *Ellis v. Smith–Broadhurst, Inc.,* 48 N.C.App. 180, 184, 268 S.E.2d 271, 273–74 (1980)); *see* N.C. Gen.Stat. § 75–16.

As to the second required element, it is not disputed that DIRECTV's acts were in or affected commerce. Cephas has alleged additionally that he was injured and that DIRECTV's acts were the proximate cause of that injury. (Answer ¶¶ 17–19, 21–22.) The only question remaining for this court is whether Cephas has sufficiently alleged that DIRECTV committed an unfair or deceptive act.

■ The NCDCA provides specific examples of unfair or deceptive acts that are barred in the context of debt collection; Cephas alleges violations of sections 75–51 (banning threats and coercion) and 75–54 (banning deceptive representations). N.C. Gen.Stat. §§ 75–51, –54. Although DIRECTV cannot be directly liable under the NCDCA, provisions of that statute provide examples of behavior that will be considered unfair and deceptive within the broader scope of the UDTPA's restrictions. *See Talbert v. Mauney,* 80 N.C.App. 477, 481, 343 S.E.2d 5, 8 (1986) ("We interpret [N.C. Gen.Stat. § 75–56] to mean that, though in the area of debt collection, unfair or deceptive acts in commerce are limited to those acts set out in Article 2, those specific practices delineated as prohibited are examples of unfair practices within the broader scope of [ ] § 75–1.1."). Therefore, acts directly prohibited by sections 75–51 and 75–54 of the NCDCA in the specific context of debt

collection may also be prohibited as general business practices under the UDTPA.

■ Turning then to the examples of prohibited conduct provided by the NCDCA, Cephas alleges that DIRECTV wrongfully threatened to prosecute him under both civil and criminal statutes, represented that it "carried the weight of law enforcement," intimated "that DIRECTV has control over criminal statutes," and "meant to intimidate and carry the weight of authority." (Answer at 6, 7.) Without considering evidence in this matter, the court cannot say whether DIRECTV actually engaged in the abusive practices alleged. Motions to dismiss are decided on the basis of the pleadings with all allegations resolved in favor of the nonmovant. Fed.R.Civ.P. 12(b); *Jenkins v. McKeithen,* 395 U.S. 411, 422, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). As such, for purposes of this motion, the court will accept as true Cephas's claim that DIRECTV falsely accused him of a crime, represented that it had the power of law enforcement, and threatened to take action not permitted by law. Each of these claims adequately alleges an act that is prohibited by the NCDCA. *See* N.C. Gen.Stat. §§ 75–51(2), (5), (8), –54(4). North Carolina courts would likely find that these acts, when performed outside the context of debt collection, also violate the UDTPA. *See Talbert,* 80 N.C.App. at 481, 343 S.E.2d at 8 (finding that the NCDCA provides examples of conduct that will also be prohibited by the UDTPA when taken outside the course of debt collection). Since Cephas

has sufficiently alleged that DIRECTV engaged in unfair and deceptive practices in violation of the UDTPA, DIRECTV's motion to dismiss this claim will be denied.[3]

### C. The *Noerr–Pennington* Doctrine

■ DIRECTV asserts that, even if Cephas's counterclaims were sufficiently pleaded, his suit is barred because both claims are based on pre-litigation demand letters sent by DIRECTV. DIRECTV claims that these letters are "immunized" under the *Noerr–Pennington* doctrine and so cannot provide a basis for litigation.

The *Noerr–Pennington* doctrine bars ongoing litigation from becoming the basis of a counterclaim but does so only in limited circumstances. The doctrine developed from a series of Supreme Court cases holding that petitions to the government, including those undertaken through litigation, would be wholly immune from federal antitrust liability under the Sherman Act, even though these acts might have the effect of eliminating competition.[4] *See* Robert L. Tucker, *Vexatious Litigation as Unfair Competition, and the Applicability of the Noerr–Pennington Doctrine,* 22 Ohio N.U. L.Rev. 119, 133 (1995). As such, the doctrine is usually employed in antitrust cases and the Supreme Court has described *Noerr–Pennington* as a "doctrine of antitrust immunity." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 51, 113 S.Ct. 1920, 1923, 123 L.Ed.2d 611 (1993).

---

**3.** Having reviewed the letters from DIRECTV, which Cephas seeks to add as an exhibit to his response (discussed herein), the court feels it necessary to note that Cephas's remaining counterclaim under the UDTPA likely merits dismissal. However, since the letters constitute evidence, they may not be considered when deciding a Rule 12(b)(6) motion and thus cannot provide an appropriate basis for

dismissal of Cephas's claim at this stage of the proceedings.

**4.** However, if the lawsuit in question were "objectively baseless," it could form the basis for a counterclaim under the "sham exception" to the *Noerr–Pennington* doctrine. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 51, 113 S.Ct. 1920, 1923, 123 L.Ed.2d 611 (1993).

DIRECTV urges that the doctrine be applied to prevent its demand letters from becoming the basis of Cephas's counterclaims, even though the letters are pre-litigation conduct and the counterclaims do not allege antitrust violations. It is true that the *Noerr–Pennington* doctrine immunizes not only ongoing litigation, but also some pre-litigation conduct, such as the demand letters in question here. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir.1992) (finding that "those acts reasonably and normally attendant upon effective litigation" are also protected by the doctrine, including pre-litigation warnings that a suit is imminent); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir.1983) (same).

It is also true that the doctrine has been applied outside the context of antitrust liability. However, in all of the cases cited by DIRECTV,[5] the doctrine is extended, but the original rationale forwarded by the Supreme Court is preserved. That rationale finds that, when subscribing liability by statute, legislatures could not also have intended for that liability to apply in a way that would chill petitions for government action, including the right to file a lawsuit seeking judicial redress. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137–38, 81 S.Ct. 523, 529–30, 5 L.Ed.2d 464 (1961) ("The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms."). The doctrine should then only be extended to protect petitions for government action when suits based on those petitions would have the effect of deterring them. Following that rationale, the doc-trine should only be applied in this case if allowing DIRECTV's demand letters to become the basis of Cephas's counterclaims would have the effect of deterring future meritorious litigation.

However, counterclaims brought under the NCDCA and the UDTPA do not have a chilling effect on good faith litigation. Since both statutes prevent only unfair and deceptive acts, parties bringing or threatening to bring meritorious, good faith claims cannot by definition be subject to liability under the NCDCA or the UDTPA. As such, parties bringing good faith claims under the NCDCA or the UDTPA do not need the protections of the *Noerr–Pennington* doctrine. Conversely, parties who threaten consumers with nonmeritorious litigation should be subject to liability under either statute, for these acts may well be unfair and deceptive. For this reason, the court finds that the *Noerr–Pennington* doctrine should not be extended in these circumstances and does not bar Cephas's counterclaims against DIRECTV.

## D. Defendant Cephas's Motion to Amend Response

Cephas has moved to amend his response to DIRECTV's motion to dismiss. The amendment seeks to add as exhibits the two letters that DIRECTV mailed to Cephas; these letters provide the basis of Cephas's counterclaims. DIRECTV has not opposed this motion.

The court will grant Cephas's motion to amend his response. However, because motions to dismiss are decided on the basis of pleadings alone, the court did not con-

---

**5.** *See, e.g., Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir.1988) (holding that reporting a nursing home's violations to government authorities was a privileged petitioning activity under the *Noerr–Pennington* doctrine and therefore im-mune from suit); *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 649–50 (7th Cir.1983) (finding that registering complaints with the SEC was a privileged petitioning activity protected by the First Amendment and immune from suit under *Noerr–Pennington*).

sider these exhibits when deciding DI-RECTV's motion to dismiss. Fed.R.Civ.P. 12.

IT IS ORDERED that Plaintiff's Motion to Dismiss Defendant's Counterclaims [7] is GRANTED as to Defendant's claim under the North Carolina Debt Collection Act and DENIED as to Defendant's claim under North Carolina's Unfair and Deceptive Trade Practices Act. Defendant's Motion to Amend the Response to Plaintiff's Motion to Dismiss [10] is GRANTED.