IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-642

Filed: 20 December 2016

Orange County, No. 15 CVS 1475

KENNETH I. MOCH, Plaintiff,

v.

A.M. PAPPAS & ASSOCIATES, LLC, ART M. PAPPAS, and FORD S. WORTHY, Defendants.

Appeal by plaintiff from order entered 25 February 2016 by Judge James E. Hardin, Jr. in Orange County Superior Court. Heard in the Court of Appeals 15 November 2016.

> *Spilman Thomas & Battle, PLLC, by Jeffrey D. Patton, Nathan B. Atkinson, and Erin Jones Adams, for plaintiff-appellant.*

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Michael W. Mitchell, Christopher G. Smith, and Clifton L. Brinson; and Tharrington Smith, LLP, by Wade M. Smith, for defendants-appellees.*

ZACHARY, Judge.

Kenneth I. Moch (plaintiff) appeals from an order dismissing his claims against A.M. Pappas & Associates, LLC, Art M. Pappas, and Ford S. Worthy (defendants) for abuse of process and unfair or deceptive trade practices. Plaintiff's complaint was dismissed pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), for failure to state a claim upon which relief can be granted. On appeal plaintiff argues that the trial court erred

and that his complaint included factual allegations that established all of the elements of both claims. We conclude that the trial court's order should be affirmed.

I.  Factual and Procedural History

Defendant A.M. Pappas & Associates, LLC, is a company that manages investment funds and specializes in investments in the life sciences sector. Defendant Art M. Pappas is the company's managing partner, and defendant Ford S. Worthy is the company's chief financial officer. Beginning in 2011, defendants managed funds that included investments in Chimerix, Inc., a corporation involved in the development of anti-viral medical treatments. Plaintiff was the president and CEO of Chimerix, Inc. from April 2010 until April 2014, when he left Chimerix.

On 22 October 2014, plaintiff sent an anonymous email to the North Carolina State Treasurer, using an email account that plaintiff had created under the name "pappasventureswhistleblower@gmail.com." The email stated the following:

> To whom it may concern:
>
> I am writing this because of my concerns about the activities of Arthur Pappas at Pappas Ventures. I want to bring 3 things to your attention:
>
> 1. Potential misuse and misappropriation of funds. I have reason to believe that Mr. Pappas has diverted somewhere around $2 million of funds over the course of time, via expenses and payments to others. Mr. Worthy may know of this and be involved. I believe this would require an audit of the Pappas Ventures financials, as Mr. Pappas is skilled in hiding this misuse.

2. High employee turnover at Pappas Ventures. This is due to the instability and unpredictability of Mr. Pappas. There has been a very high turnover of personnel - partners and investment professionals, more than other venture funds. People leave this fund and do not trust him.

3. Perhaps not relevant, but there have been whispers of issues of domestic violence/hitting women. This would further damage the viability of the fund. I do not wish to be a gossip, but this is relevant to Mr. Pappas's moral code.

Since there is no whistleblower hotline, I felt an obligation to contact people involved with Pappas Ventures and A.M. Pappas. I have now done all that I can to bring these issues to light, and my conscience is clear. What those of you copied on this email do individually or collectively is up to you.

Plaintiff later exchanged follow-up emails with an employee of the Department of State Treasurer and forwarded his email to others whom plaintiff describes as "investors in or collaborators with the funds managed by" defendants.

On 4 June 2015, defendants filed suit against the sender of the anonymous emails, whom defendants identified as "John Doe or Jane Doe," seeking damages for libel *per se* and libel *per quod*. On 12 October 2015, the law firm of Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P. (hereafter "Smith Anderson") sent a letter to plaintiff on the law firm's letterhead. The letter bore the heading "CONFIDENTIAL" and "<u>FOR PURPOSES OF SETTLEMENT ONLY</u>." (use of all capital letters and underlining in original). The letter stated the following:

Re: *A.M. Pappas & Associates, LLC, et al. v. John Doe or Jane Doe*

In the Superior Court of Durham County, North County; 15 CVS 3383

Dear Mr. Moch:

This law firm represents Pappas Capital, LLC (f/k/a A. M. Pappas & Associates, LLC), its affiliates, Arthur Pappas and Ford Worthy. We obtained evidence demonstrating that you are responsible for the defamatory and malicious emails from the previously anonymous email account: pappasventureswhistleblower@gmail.com, as described in the "Doe" lawsuit that we filed June 4 in Durham County Superior Court. A copy of that lawsuit is enclosed.

We will amend the "Doe" Complaint and name you as a defendant and immediately commence public litigation against you unless you agree to the following material settlement terms in principle by Friday, October 16, 2015:

[1.] A written retraction and apology;

[2.] Payment of $10 million, which is a figure discounted for settlement purposes of the net present value of the economic harm done to our clients. At trial, we will seek at least $25 million;

[3.] Complete disclosure and sharing of information that identifies anyone else involved with you in the defamatory emails. Based on the nature and quality of this information, we may be willing to compromise the financial settlement demand; and

[4.] Our clients will refrain from reporting you to law enforcement authorities or regulatory agencies for violation of [N.C. Gen. Stat. §] 14-196.3 and all other potential criminal violations, including federal violations.

Also enclosed with this letter is a document subpoena to you. That subpoena requires you to produce certain materials to us at our offices on October 20, 2015. You *may*

> *not destroy or alter any evidence* identified in the subpoena or that is relevant to this matter. You are *obligated by law* to preserve all relevant evidence. Failure to comply with this obligation is a criminal offense. You are on notice of this duty by virtue of receipt of this correspondence. We are, however, willing to work with you on the timing, scope, and method of production to ensure that the subpoena does not impose any undue burden and to protect the confidentiality of your personal information.
>
> Also enclosed is a testimony subpoena requiring you to appear at our offices on Saturday, October 24, 2015 to give your testimony in the lawsuit under oath.
>
> Separately, we are serving your spouse with a document subpoena for any relevant electronic and documentary evidence she may possess.
>
> This is a very serious matter.
>
> The defamatory, baseless accusations have caused serious damage to our clients and their business partners and they will be made whole.
>
> I urge you or your counsel to contact me immediately to begin the process of addressing this matter. My office number is on the letterhead. My cellphone is [omitted].

(emphasis in original).

On 19 October 2015, the law firm of Nelson Mullins Riley & Scarborough LLP (hereafter "Nelson Mullins") sent a letter to a Smith Anderson attorney, stating that the Nelson Mullins firm represented plaintiff, and objecting to the subpoenas issued by defendants on various grounds, including attorney-client privilege, spousal privilege, and an assertion that the subpoenas' production requests were unduly

burdensome.  On 6 November 2015, defendants filed a motion to compel plaintiff's production of the documents sought in their subpoenas.  On the same day, Smith Anderson sent a letter to an attorney with the law firm Spilman Thomas & Battle, PLLC.[1]  The letter was headed "SETTLEMENT CONFIDENTIAL" and "FOR YOUR EYES AND YOUR CLIENTS' EYES ONLY" and stated that:

> Re: *A.M. Pappas & Associates, LLC, et al. v. John Doe or Jane Doe*
> Durham County - 15 CVS 3383
>
> Dear Jeff:
>
> Thank you for our conversation Wednesday afternoon. Our clients are very frustrated at the pace and the missed expectations and were prepared to take decisive action prior to your last minute phone call. But you provided meaningful information which has altered our trajectory in a way that preserves for a very short period the possibility of keeping the horse in the barn. In particular, you confirmed that Mr. Moch is the malicious emailer and that he will acknowledge that.
>
> From here, there are two possible paths forward. The first is the settlement path which to be successful must be completed by November 30th. We are willing to meet November 17 and the incentive to Mr. Moch and Ms. Stolzman is that our clients will negotiate a significant reduced cap on damages -- including potentially a minimal settlement amount -- if you will provide the information that I mentioned to you on the phone. The document that I previously mentioned when we first spoke is Exhibit C to the complaint filed in the business court. You will want to look at paragraph 11.  You and I can arrive at a method to ensure that your clients will receive the value for the

---

[1] The contents of the letter indicate that on 6 November 2015 plaintiff was represented by this law firm.

information if it is disclosed and that they will not be in the position of giving information without receiving any promised value, nor us giving value for information that is not valuable.

That is the basic path to settlement. What follows is the immediate litigation alternative.

We have noticed your motion to quash the Google subpoena before Judge Hudson in Durham Superior Court on Monday, November 16. That notice is enclosed. That notice makes no reference to your client. Upon receiving your motion, we reviewed the Tolling Agreement to see if your action constituted a breach and concluded as you must have that the Tolling Agreement has no effect whatsoever on the *Doe* litigation.

Accordingly, we also enclose with this letter our motions to compel on the subpoenas to Mr. Moch and Ms. Stolzman, which do reference your clients. We have not filed these with the Court, but if we do not receive a satisfactory response from your clients by close of business Wednesday of next week, we will file them with the Court and bring these on for hearing also.

At the hearing on the 16th, we will definitively identify Mr. Moch as the malicious emailer using cyber-fingerprints that definitively place him at the FedEx Kinko's at 114 West [Franklin Street,] Chapel Hill[,] on January 23 and accessing the Gmail account from that location, as well as the bevy of AT&T geolocation data placing Mr. Moch's cellphone in The Siena Hotel and the Durham South Regional Library when he conducted his malicious email activities from those locations.

We are pursuing every option and will exhaust them all. I also include the subpoena for video surveillance of the Public Storage self-storage facility at 515 S. Greensboro Road visited by Ms. Stolzman the day after she and her husband received their subpoenas, and the day before one

of their vehicles went to Eubanks Road, the location of the Chapel Hill dump. I previously raised a concern about document preservation with your clients' prior counsel. If there is an issue, we will pursue every remedy.

We will also report Mr. Moch to the appropriate law enforcement authorities for cyberstalking. As we've discussed, Mr. Moch's email campaign, which was intended to harass and embarrass Mr. Pappas and Mr. Worthy, constitutes criminal cyberstalking in violation of N.C. Gen. Stat. 14-196.3. Mr. Pappas and Mr. Worthy have thus far refrained from reporting Mr. Moch to law enforcement. And, consistent with 2008 Formal Ethics Opinion 15, Mr. Pappas and Mr. Worthy are prepared as part of a settlement permanently to refrain from reporting Mr. Moch to law enforcement. If, however, we are unable to agree on the next steps in the settlement process as set forth in this letter, Mr. Moch's conduct will immediately be reported to the proper authorities.

In addition to all of the foregoing, by at latest November 30 we will have no choice but to file a complaint publicly identifying Mr. Moch as the anonymous emailer and describing in detail his malicious intent and his failed attempts to hide his tracks. At that point, we will bring this matter to the attention of Chimerix for indemnity to which Mr. Pappas is entitled, and Mr. Moch is contractually obligated to respond to Chimerix' requests for information. So we will be able to get by right through the Court or potentially Chimerix all information for which we presently are willing to give your clients significant value in order to avoid full litigation.

We will stand down on all these immediate litigation issues for the Tolling Period and withdraw our notice of hearing for November 16 on all issues if we can follow the roadmap that we initially discussed, i.e., (i) you provide fulsome document production as we have discussed before our November 17 meeting, which includes third party involvement (indicating and fully disclosing whether you

> have the Linsley information we are requesting, but not producing the information yet); (ii) we simultaneously give [you] our detailed damages disclosure; (iii) we meet November 17 and discuss a method to ensure value is received for third-party information to be provided by Mr. Moch by both Mr. Moch and us, and we address the required acknowledgement.
>
> All of this would be settlement confidential disclosures and discussions.

On 18 November 2015, defendants filed an amended complaint naming plaintiff as the defendant instead of "John Doe or Jane Doe." On the same date, plaintiff filed suit against defendants, asserting claims for abuse of process and unfair or deceptive trade practices. On 30 November 2015, defendants filed a motion to dismiss plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1 Rule 12(b)(6). Plaintiff filed an amended complaint on 7 January 2016 and defendants filed an amended motion for dismissal on 8 January 2016. Following a hearing conducted on 13 January 2016, the trial court entered an order on 25 February 2016, granting defendants' motion and dismissing plaintiff's claims with prejudice. Plaintiff noted a timely appeal to this Court.

## II. Standard of Review

N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2015) allows a party to move for dismissal of a claim or claims based on the complaint's "[f]ailure to state a claim upon which relief can be granted[.]" "The motion to dismiss under N.C. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the

complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citations omitted). "[T]he well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (internal quotation omitted). "When the complaint on its face reveals that no law supports the claim, reveals an absence of facts sufficient to make a valid claim, or discloses facts that necessarily defeat the claim, dismissal is proper." *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448, 781 S.E.2d 1, 7-8 (2015) (citing *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (other citation omitted)). "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

"When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment." *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009). Moreover:

> Although it is true that the allegations of [the plaintiff's] complaint are liberally construed and generally treated as

true, the trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint. Furthermore, the trial court is "not required . . . to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

*Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009) (citing *Schlieper* and quoting *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008)). "When reviewing pleadings with documentary attachments on a Rule 12(b)(6) motion, the actual content of the documents controls, not the allegations contained in the pleadings[.]" *Schlieper* at 265, 672 S.E.2d at 552 (citing *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001)).

### III.  Plaintiff's UDTPA Claim

N.C. Gen. Stat. § 75-1.1 (2015) provides in relevant part that:

> (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.
>
> (b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

"In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff."  *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704,

711 (2001) (citation omitted). In the present case, we conclude that plaintiff's complaint discloses on its face that the acts upon which plaintiff rests his claim were not "in or affecting commerce."

As noted above, N.C. Gen. Stat. § 75-1.1(b) provides that, for purposes of the statute, "commerce" "does not include professional services rendered by a member of a learned profession." "[T]he practice of law has traditionally been considered a learned profession, as indeed it is. Furthermore, this Court has . . . applied the exemption in the context of a law firm. Thus, we conclude that . . . a law firm and its attorneys . . . are members of a learned profession." *Reid v. Ayers*, 138 N.C. App. 261, 266, 531 S.E.2d 231, 235 (2000) (citing *Sharp v. Gailor*, 132 N.C. App. 213, 217, 510 S.E.2d 702, 704 (1999). "Although no bright line exists, we think that the exemption applies anytime an attorney or law firm is acting within the scope of the traditional attorney-client role." *Reid*, 138 N.C. App. at 267, 531 S.E.2d at 236.

We have carefully examined the allegations of plaintiff's complaint and have accepted as true the factual allegations in the complaint. We have, however, disregarded conclusory allegations that state legal conclusions or unwarranted inferences of fact, such as plaintiff's assertion that defendants acted "in retaliation for [plaintiff's] exercising his First Amendment rights[.]" We have also disregarded allegations with no obvious relevance to the issue of whether plaintiff's complaint states a claim for unfair or deceptive trade practices. For example, the complaint

contains a number of allegations that appear to be included in order to establish matters such as (1) the basis for plaintiff's alleged concerns about defendants' business practices; (2) the fact that the policies of the North Carolina State Treasurer support transparency and accountability; (3) the sufficiency of an audit conducted by defendants in response to plaintiff's anonymous emails; (4) plaintiff's speculations as to the amount of damages that defendants incurred as a result of the emails; and (5) whether defendants' counsel acted in violation of the Code of Professional Responsibility. Allegations addressed to these issues or to similarly peripheral matters do not contribute to the determination of whether the material factual allegations of plaintiff's complaint state a claim for relief.

Moreover, we have disregarded allegations that are directly contradicted by the documents attached to or referenced in plaintiff's complaint. For example, plaintiff's complaint alleges that the letters from defendants' counsel regarding settlement negotiations "falsely threaten[ed]" plaintiff that failure to obey their subpoenas would "be a criminal offense." In fact, the letters do not state that "failure to obey" a subpoena is a criminal offense, but only that the *destruction of evidence* that had been subpoenaed is a violation of criminal law. Having conducted a detailed review of plaintiff's complaint, accepting its well-pleaded factual allegations as true while disregarding other allegations as discussed above, we conclude that plaintiff's

claim for unfair or deceptive acts rests entirely upon the contents of the two letters sent from defendants' counsel to plaintiff or plaintiff's counsel.

This Court has held that a party may not bring a claim for unfair or deceptive practices based upon the actions of the defendant's counsel. In *Davis Lake Community Ass'n v. Feldmann*, 138 N.C. App. 292, 530 S.E.2d 865 (2000), the plaintiff, the homeowners' association of a planned development community, sued residents of the community to recover delinquent homeowners' assessments. The homeowners filed a counterclaim against the plaintiff for unfair debt collection and later sought to amend their counterclaim to join plaintiff's counsel as a required party. The *Davis Lake* opinion reviewed *Reid v. Ayers*, in which this Court held that in order to state a claim for unfair debt collection, a complaint must not only allege facts stating a violation of the specific regulations applicable to debt collection but must also satisfy "the more generalized requirements of all unfair or deceptive trade practice claims," which exclude from the definition of "commerce" the "professional services rendered by a member of a learned profession." *Davis Lake*, 138 N.C. App. at 296, 530 S.E.2d at 868-69. The *Davis Lake* Court held that the exception for learned professions stated in N.C. Gen. Stat. § 75-1.1 precluded the defendants from joining plaintiff's counsel in their counterclaim. We then held that:

> We again emphasize that defendants only have a valid claim against plaintiff, not its counsel. Thus, in proceeding with their claim, defendants must focus on those alleged unfair debt collection practices employed exclusively by

plaintiff. <u>Any acts engaged in by plaintiff's counsel, even if cloaked in terms of a principal-agent relationship, fall within the learned profession exemption and thus outside the purview of the NCDCA</u>.

*Davis Lake*, 138 N.C. App. at 297, 530 S.E.2d at 869 (emphasis added). We conclude that *Davis Lake* is controlling on the issue of whether plaintiff can bring a claim against defendants based upon letters sent by defendants' counsel, and that plaintiff may not do so.

In arguing for a different result, plaintiff does not cite controlling authority to the contrary. Plaintiff makes the conclusory assertion that the holding of *Davis Lake* "was not unbridled or without limits," but fails to articulate how the present case exceeds the "limits" of that case. Plaintiff also identifies factual differences between the alleged actions of the counsel in *Davis Lake* and those of counsel in the present case, without proffering a basis upon which these factual differences would change our legal analysis. In addition, plaintiff cites *Huff v. Gallagher*, 521 B.R. 107 (Bankr. E.D.N.C. 2014), in support of his position. "We note initially that a decision of the Bankruptcy Court is not binding on this Court." *In re Foreclosure of Bass*, 217 N.C. App. 244, 254, 720 S.E.2d 18, 26 (2011), *rev'd on other grounds*, 366 N.C. 464, 738 S.E.2d 173 (2013). Furthermore, the opinion in *Huff* fails to acknowledge our holding in *Davis Lake,* or to distinguish it. As a result, *Huff* is neither controlling nor persuasive authority.

Moreover, plaintiff fails to identify any specific acts alleged in his complaint that (1) were undertaken by defendants alone and not by defendants' counsel, and (2) could support a claim for unfair or deceptive practices. In his reply brief, plaintiff states that his complaint "asserted various acts undertaken directly by Defendants that underlie his claims," citing paragraphs Nos. 1, 26, 38, 41, 45, 46, 59, 72, 81, 82, and 86. We have examined these allegations and conclude that they consist of general background information, the discussion of irrelevant matters such as plaintiff's speculation on the extent of the damages suffered by defendants, conclusory assertions that are not supported by factual allegations, and the merits of the terms of settlement that were offered by defendants' counsel in their letters. We hold that plaintiff's complaint failed to allege facts that, if true, would establish that the acts complained of were "in commerce" as the term is defined in N.C. Gen. Stat. § 75-1.1(b), and that the trial court did not err by dismissing this claim. As a result, we need not address the parties' arguments regarding whether plaintiff's complaint stated facts supporting the other elements of a claim for unfair or deceptive trade practices.

## IV. Plaintiff's Claim for Abuse of Process

"Abuse of process is the misapplication of civil or criminal process to accomplish some purpose not warranted or commanded by the process." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 602, 646 S.E.2d 826, 831 (2007) (internal

quotation omitted).  "Two elements must be proved to find abuse of process: (1) that the defendant had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used, and (2) that the defendant committed some act that is a 'malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ.' " *Id.* (quoting *Stanback*, 297 N.C. at 200, 254 S.E.2d at 624) (emphasis in original). However, "[t]here is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." *Stanback* at 201, 254 S.E.2d at 624.

On appeal, plaintiff makes a number of arguments to support his contention that the letters sent by defendants' counsel and defendants' issuance of subpoenas constitute "abuse of process in violation of North Carolina law." Plaintiff asserts that defendants should not have issued subpoenas in connection with their "John Doe" lawsuit, given that defendants had information indicating that plaintiff was the person who had sent the emails; that the subpoenas were issued with the "ulterior motive" of "forc[ing plaintiff] to the negotiating table," or, alternatively, were issued with the "ulterior purpose" of pressuring plaintiff to provide testimony for defendants in another civil case.  However, at the hearing on this matter, plaintiff's counsel made the following argument regarding plaintiff's claim for abuse of process:

> PLAINTIFF'S COUNSEL: To touch on the abuse of process very quickly: The defendants want to characterize it as a mere issuance of a subpoena. That's not the im-- that's not the abuse of the process. It's the totality of the

> circumstances and the idea that you have to appear within -- appear on a Saturday for a deposition, produce some 55 subsets of documents and, oh, yeah, by the way, this is all coming under the context of a letter which will demand money again as we have alleged that you're not entitled to. That's the abuse of the process.

"Our appellate courts have 'long held that where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount [on appeal].' " *State v. Portillo*, __ N.C. App. __, __, 787 S.E.2d 822, 832 (2016) (quoting *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (internal quotation omitted)). Before the trial court, plaintiff argued that the "totality of the circumstances" of the issuance of subpoenas constituted an abuse of process, based on the facts that the subpoenas required the taking of a deposition on a Saturday, the subpoenas requested the production of numerous documents, and the subpoenas were attached to a letter that conditioned an offer to settle upon plaintiff's payment of money to defendants. Having relied upon this argument at trial, plaintiff may not raise new arguments on appeal, to which defendants had no chance to respond at trial and on which the trial court had no opportunity to rule. On appeal, plaintiff fails to articulate how the facts noted above would support a claim for abuse of process, and we conclude that plaintiff is not entitled to relief on the basis of this argument.

For the reasons discussed above, we conclude that the trial court did not err by dismissing plaintiff's complaint, and that its order should be

AFFIRMED.

Judges CALABRIA and INMAN concur.