Martin Commc'ns, LLC v. Flowers, 2021 NCBC 21.

STATE OF NORTH CAROLINA

WAKE COUNTY

MARTIN COMMUNICATIONS, LLC,

Plaintiff,

v.

REBECCA D. FLOWERS d/b/a FLOWERS PLANTATION; DFW DEVELOPMENT, INC.; and FLOWERS PLANTATION INFORMATION AND SALES, LLC,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 6137

**ORDER AND OPINION ON MOTION TO DISMISS**

1. **THIS MATTER** is before the Court on Defendants' Motion to Dismiss (the "Motion") filed on 28 August 2020 pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)"). (ECF No. 20.)

2. For the reasons set forth herein, the Court **GRANTS** in part and **DENIES** in part the Motion.

*Womble Bond Dickinson (US) LLP, by Charles A. Burke, for Plaintiff Martin Communications, LLC.*

*The Armstrong Law Firm, P.A., by L. Lamar Armstrong, Jr. and Daniel K. Keeney, for Defendants Rebecca D. Flowers d/b/a Flowers Plantation; DFW Development, Inc.; and Flowers Plantation Information and Sales, LLC.*

Robinson, Judge.

## I.     INTRODUCTION

3. This action arises out of a dispute over software database development and marketing services provided by Plaintiff for Defendants, the terms on which the

parties agreed Plaintiff would provide such services, and the subsequent termination of their relationship.

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact on the Motion brought pursuant to Rule 12(b)(6), but instead only recites those facts included in Plaintiff's Amended Complaint relevant to the Court's determination of the Motion.

### A. The Parties

5. Plaintiff Martin Communications, LLC ("Plaintiff") is a limited liability company organized and existing under North Carolina law with its headquarters in Raleigh, North Carolina. (First Am. Compl. & Demand for Jury Trial ¶ 1, ECF No. 10 ["Am. Compl."].) Plaintiff is a marketing company that specializes in a variety of marketing, public relations, web development, and computer software application services. (Am. Compl. ¶ 1.)

6. Defendant Rebecca D. Flowers ("R. Flowers") is an individual who sells land for housing developments. (Am. Compl. ¶ 2.) R. Flowers often does business under the name "Flowers Plantation." (Am. Compl. ¶ 2.)

7. Defendant DWF Development, Inc. ("DWF" and with R. Flowers referred to herein as "Flowers") is a North Carolina corporation, and R. Flowers is the registered agent for DWF. (Am. Compl. ¶ 3.)

8. Defendant Flowers Plantation Information and Sales, LLC ("FP Sales" and referred to herein with Flowers and Flowers Plantation, as "Defendants") is a North

Carolina limited liability company, and R. Flowers is the registered agent for FP Sales. (Am. Compl. ¶ 4.)

**B.  The Computer Software Agreement**

9.  Plaintiff and Defendants' contractual arrangements were initiated at meetings on 20 February 2020 and 24 March 2020. (Am. Compl. ¶ 11.) At these meetings, R. Flowers represented to Plaintiff that she "very badly needed to have a new computerized software database system installed for her business that would permit the effective management of various categories of business data." (Am. Compl. ¶ 11.) R. Flowers also represented to Plaintiff that Flowers were (1) firmly committed to developing such a system, (2) willing to wait the three years that it would take to fully implement such a system, and (3) willing to spend the amounts necessary to completely develop and implement this new system. (Am. Compl. ¶ 11.)

10.  Plaintiff, Flowers Plantation, and DWF entered into a Computer Software Agreement (the "CSA") on 27 March 2020. (Am. Compl. ¶ 13, *see also* Am. Compl. Ex. A.) Under the CSA, Plaintiff agreed to create and install a customized Customer Relationship Management database program ("CRM") for Flowers, to allow for the organization and management of a wide array of data. (Am. Compl. ¶ 12.) The CSA provides that work was estimated at 35 hours per month, billed at a rate of $150 per hour, for a total of $5,250 per month through 30 June 2023. (Am Compl. ¶ 12; *see also* Am. Compl. Ex. A ¶¶ 1–2.)

11.  From 27 March 2020 to 29 April 2020, Plaintiff put a substantial amount of work into the initial design, development, and programming of the CRM. (Am.

Compl. ¶¶ 13, 17.) During this period, Plaintiff met with Flowers' management, disclosed operational details of the CRM, and provided Flowers with a working prototype of the CRM, which demonstrated its features and functionality. (Am. Compl. ¶ 13.)

12. On 21 April 2020, after receiving details regarding the CRM's development, Flowers wrote to Plaintiff and claimed that (1) the CSA was intended to address only two small issues with Flowers' existing database system, and (2) the total amount due under the CSA was limited to $5,000 in total. (Am. Compl. ¶ 14.) The next day, Plaintiff provided a written response to Flowers indicating that Flowers "must be reading the wrong document[,]" because the CSA provided for services "through June 30, 2023, at a rate of $150 per hour, amounting to a monthly fee of $5,250 per month." (Am. Compl. ¶ 15.) Flowers responded on 24 April 2020 stating that "Flowers did not need any computer software programming services, and that the [CSA] was being cancelled because nothing would ever be paid to [Plaintiff] under that Agreement." (Am. Compl. ¶ 16.)

13. On 29 April 2020, Plaintiff expressed frustration with Flowers' position that they no longer needed Plaintiff's services and indicated that Plaintiff had been working diligently and made substantial progress on the project. (Am. Compl. ¶ 17.) That same day, Flowers responded by again confirming that Flowers did not need any computer software programming services under the CSA, that the contract was cancelled, and nothing would be paid to Plaintiff under its terms. (Am. Compl. ¶ 18.)

14. Until Flowers served notices of cancellation of the CSA, Plaintiff satisfied all of its duties under the CSA. (Am. Compl. ¶ 19.)

C.  **The Agency Agreement**

15. At the meetings on 20 February 2020 and 24 March 2020, the parties also discussed the possibility of entering into an agreement for Plaintiff to serve as Defendants' marketing agent. (Am. Compl. ¶ 22.) FP Sales and Plaintiff ultimately signed the Agency Agreement pursuant to which Plaintiff was to render marketing services for FP Sales, and FP Sales agreed to pay Plaintiff $10,000 per month plus an additional amount per month for services billed by the hour. (Am. Compl. ¶¶ 22, 24; *see also* Am. Compl. Ex. B.)

16. At the 24 March 2020 meeting, R. Flowers presented to Plaintiff FP Sales's operating budget for the 2020 calendar year, which showed FP Sales's marketing budget. (Am. Compl. ¶ 23.) Plaintiff was concerned that the amounts shown for marketing expenditures in this budget did not appear to be sufficient to support the marketing activities that Plaintiff understood that it would be engaged to provide. (Am. Compl. ¶ 23.) R. Flowers told Plaintiff that the budget was only a draft and it would soon be revised to show significant additional marketing expenditures during the 2020 calendar year. (Am. Compl. ¶ 23.)

17. On 21 April 2020, less than one month after the Agency Agreement was signed, Flowers wrote to Plaintiff and indicated that FP Sales no longer needed Plaintiff to provide the services specified in the Agency Agreement. (Am. Compl. ¶

25.) Notwithstanding the agreed to payment of $10,000, FP Sales also stated that the monthly fee for the Agency Agreement could only be $3,000. (Am. Compl. ¶ 25.)

18. In response, on 22 April 2020, Plaintiff refused to acquiesce to FP Sales's unilateral demand that Plaintiff agree to accept $3,000 per month for its services. (Am. Compl. ¶ 25.) Plaintiff insisted upon both parties' complete performance of their duties under the Agency Agreement, including FP Sales's payment of the $10,000 fee due for the first month of service. (Am. Compl. ¶ 25.)

19. On 24 April 2020, FP Sales again insisted that the Agency Agreement be modified. (Am. Compl. ¶ 26.) FP Sales claimed that Plaintiff did not perform its obligations under the Agency Agreement; however, FP Sales "may continue to honor the remainder of this contract" but only if Plaintiff agreed that FP Sales did not have to pay any of the $10,000 due for Plaintiff's first month of work. (Am. Compl. ¶ 26.)

20. On 29 April 2020, Plaintiff provided to FP Sales details regarding the many projects that Plaintiff completed in the first month under the Agency Agreement. (Am. Compl. ¶ 27.) That same day, FP Sales informed Plaintiff, in writing, that the Agency Agreement was being cancelled effectively immediately. (Am. Compl. ¶ 28.) FP Sales proposed a new contract for marketing services; however, Plaintiff declined to enter into a new contract. (Am. Compl. ¶ 28.)

21. Until Flowers served a notice of termination of the Agency Agreement on 29 April 2020, Plaintiff satisfied all of its duties pursuant to its terms. (Am. Compl. ¶ 29.)

### III.   PROCEDURAL BACKGROUND

22.    The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

23.    Plaintiff initiated this action on 22 May 2020 with the filing of its Complaint and Demand for Jury Trial (the "Complaint"). (ECF No. 3.) Plaintiff amended its Complaint on 29 July 2020 with the filing of its First Amended Complaint and Demand for Jury Trial (the "Amended Complaint").

24.    On 28 August 2020, Defendants filed the Motion and Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss. (Defs.' Mem. Law Supp. Defs.' Mot. Dismiss, ECF No. 21 ["Defs.' Mem. Supp."].) On 17 September 2020, Plaintiff filed Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss. (ECF No. 22.) Defendants did not file a reply brief as permitted by Rule 7.7 of the North Carolina Business Court Rules.

25.    The Court held a hearing on the Motion on 18 November 2020. (*See* ECF No. 27.) The Motion is ripe for resolution.

### IV.   LEGAL STANDARD

26.    In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the Amended Complaint in the light most favorable to Plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). The Court

accepts all well-pleaded factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274 (2005) (citation omitted).

27. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC.*, 251 N.C. App. 198, 206 (2016) (citation omitted). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (citation omitted). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (citation omitted).

28. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.' " *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166 (2002)). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses

routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (citations omitted).

## V. ANALYSIS

29. Defendants move to dismiss five of Plaintiff's claims including its claims for: (1) breach of the CSA, (2) fraud, (3) negligent misrepresentation, (4) unfair and deceptive trade practices, and (5) civil conspiracy.

### A. <u>Breach of Contract</u>

30. The Motion requests that the Court dismiss Plaintiff's first cause of action for breach of the CSA. To plead a claim for breach of contract, Plaintiff must allege the "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). "[S]tating a claim for breach of contract is a relatively low bar." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *11 (N.C. Super. Ct. June 19, 2019).

31. Defendants concede that "a factual dispute exists" as to whether Plaintiff was sufficiently paid for completing work pursuant to the terms of the CSA. (Defs.' Mem. Supp. 5.) Plaintiff completed services for Defendants between 27 March 2020 and 29 April 2020 and received no payment, despite the set rate of $150 per hour. (Am. Compl. ¶¶ 11–16.) Plaintiff's allegations of performance under the CSA, which Defendants do not contend is invalid, without payment pursuant to its terms is sufficient, for purposes of Rule 12(b)(6), to state a claim for breach of contract.

32. Therefore, the Motion, to the extent it requests that the Court dismiss Plaintiff's claim for breach of the CSA, is DENIED.

**B.      Fraud and Negligent Misrepresentation[1]**

33.      Next, the Court considers Plaintiff's claims for fraudulent inducement and negligent misrepresentation against Defendants.  Plaintiff's claims for fraud and negligent misrepresentation are premised on the same representations made by Defendants when entering into the CSA and the Agency Agreement.  (Am. Compl. ¶¶ 53, 59.)  The Court addresses each agreement in turn.

34.      To plead a claim of fraud, Plaintiff must allege "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and which (5) results in damage to the injured party." *Town of Belhaven v. Pantego Creek, LLC*, 250 N.C. App. 459, 469 (2016) (citation omitted).  "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 369 (2014) (citation omitted).

35.      Rule 9(b) requires that a claim for fraud be pled with particularity. N.C.G.S. § 1A-1, Rule 9(b).  "[I]n pleading actual fraud[,] the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry,* 302 N.C. 77, 85 (1981).  As with claims of fraud, negligent misrepresentation must also

---

[1] The Court notes that Defendants assert multiple arguments on the deficiency of Plaintiff's claims for fraud and negligent misrepresentation, including that the claims are barred by the economic loss doctrine.  The Court need not address each argument because the Court determines that the claims are deficient for the reasons stated herein.

be pled with particularity under Rule 9(b). *See Value Health Sols. Inc., v. Pharm. Research Assocs.*, 2020 NCBC LEXIS 65, at *29 (N.C. Super. Ct. May 22, 2020) ("[T]his Court and North Carolina's federal district courts have consistently held that plaintiffs are required to plead claims for negligent misrepresentation with particularity required by Rule 9(b).").

### 1. The CSA

36.     Defendants contend Plaintiff's claim for fraud, as it pertains to the CSA, should be dismissed because the alleged representations are not related to any past or existing fact but are assertions of opinion or future plans. (Defs.' Mem. Supp. 5.) While fraud cannot ordinarily be based on a promise of future intent, "a plaintiff may recover for fraud where a promise of future intent is made with a present intention not to perform." *Kornegay v. Aspen Asset Grp, LLC*, 2006 NCBC LEXIS 13, at *31 (N.C. Super. Ct. Sept. 26, 2006); *see also Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at *9 (N.C. Super. Ct. Mar. 27, 2018) ("Misrepresentation of the state of the promisor's mind is itself a misrepresentation of an existing fact, subject to a claim for fraud."). To state a claim based on a promise of future intent, the plaintiff must allege facts "from which a court and jury may reasonably infer that the defendant did not intend to carry out such representations when they were made." *Potts*, 2018 NCBC LEXIS 24, at *9; *see also Hoyle v. Bagby*, 253 N.C. 778, 781 (1961).

37.     Plaintiff alleges Defendants made the following false representations concerning the CSA: (1) Defendants were committed to developing a new software system with Plaintiff; (2) Defendants were willing to wait the requisite three years to

fully implement such a system; and (3) Defendants were willing to spend $5,250 per month for 40 months to develop the system. (Am. Compl. ¶ 11.) Plaintiff contends Defendants never had any intention of paying Plaintiff for a new software system and that these representations were made to induce Plaintiff to sign the CSA. (Am. Compl. ¶ 54.) However, Plaintiff must also allege facts from which the Court may reasonably infer that Defendants never intended to carry out their representations when they were made, *Potts*, 2018 NCBC LEXIS 24, at *9, which Plaintiff has failed to do.

38. Plaintiff's negligent misrepresentation claim, as it pertains to the CSA, is based on the same promissory representations and statements of intent on which Plaintiff bases its fraud claim, not based on any information prepared by Defendants when entering into the CSA, and therefore Plaintiff's claim for negligent misrepresentation fails. *See Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 40 (2006) (affirming the trial court's dismissal of a negligent misrepresentation claim where the plaintiff failed to allege that the information provided "was prepared without reasonable care"); *see also Oberlin Capital, L.P. v. Slavin*, 2000 NCBC LEXIS 8, at *25–26 (N.C. Super. Ct. Apr. 28, 2000) (declining to

expand the scope of negligent misrepresentation claims beyond cases involving one party preparing information for another).

39.     Therefore, the Motion to Dismiss should be GRANTED and the fraud and negligent misrepresentation claims should be DISMISSED without prejudice to the extent they are based on representations made when executing the CSA.[2]

## 2.     The Agency Agreement

40.     The requirement of justifiable reliance for negligent misrepresentation claims and the requirement of reasonable reliance in fraud claims are similar. *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 224 (1999); *see also Higgins v. Synergy Coverage Sols., LLC*, 2020 NCBC LEXIS 6, at \*37–38 (N.C. Super. Ct. Jan. 15, 2020).  To plead reasonable or justifiable reliance a plaintiff must sufficiently allege that it "made a reasonable inquiry into the misrepresentation and allege that [it] was denied the opportunity to investigate or that [it] could not have learned the true facts by exercise of reasonable diligence."  *Rountree v. Chowan Cty.*, 252 N.C. App. 155, 162 (2017); *see also Higgins*, 2020 NCBC LEXIS 6, at \*32 (requiring the same allegations for a fraud and fraudulent inducement claim).

41.     Plaintiff alleges Defendants made the following fraudulent representations which induced Plaintiff to sign the Agency Agreement: (1) that FP Sales's budget shown to Plaintiff was "only a draft," and (2) that Defendants would make "significant additional marketing expenditures" in 2020 that would be reflected in a revised budget.  (Am. Compl. ¶ 23.)  Plaintiff additionally alleges that Defendants knew the

---

[2] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013).

budget was final, and Defendants never intended to make additional marketing expenditures. (Am. Compl. ¶ 31.)

42. When Plaintiff reviewed the budget at the 24 March 2020 meeting, Plaintiff was "concerned that the amounts shown for marketing expenditures in this budget did not appear to be sufficient to support the marketing activities that [Plaintiff] understood that it would be engaged to provide." (Am. Compl. ¶ 23.) Three days later, notwithstanding Plaintiff's concern regarding FP Sales's budget, DWF, Flowers Plantation, and Plaintiff entered into the Agency Agreement. (*See* Am. Compl. Ex. B.) In fact, the Amended Complaint tends to show that Plaintiff did not review Defendants' budget a second time until mid-April 2020. (Am. Compl. ¶ 34.b.)

43. Upon careful review of the Amended Complaint, the Court concludes that there are insufficient allegations to show that Plaintiff made a reasonable inquiry into Defendants' representations regarding the budget and therefore fail to establish reasonable or justifiable reliance. *See Carmayer, LLC v. Koury Aviation, Inc.*, 2017 NCBC LEXIS 82, at *27–32 (N.C. Super. Ct. Sept. 11, 2017) (dismissing a negligent misrepresentation claim for the plaintiff's failure to establish that it made a reasonable inquiry into representations in a pro forma regarding the defendant's profitability). While Plaintiff makes allegations that "these representations involved information which was exclusively within the knowledge of the Defendants, and [Plaintiff] had no way to ascertain the falsity of these representations at the time they were made[,]" (Am. Compl. ¶¶ 56, 61), the Court concludes that these conclusory allegations are insufficient to support Plaintiff's claims for fraud and negligent

misrepresentation as they pertain to the Agency Agreement. *See Volume Servs. v. Ovation Food Servs., L.P.*, 2018 NCBC LEXIS 108, at \*42–43 (N.C. Super Ct. Oct. 17, 2018). The Amended Complaint is devoid of any allegations that Plaintiff even attempted to investigate the veracity of Defendants' statements regarding the budget or obtain access to information held by Defendants. *See Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 449 (2015) ("Reliance is not reasonable if a plaintiff fails to make any independent investigation or fails to demonstrate he was prevented from doing so." (cleaned up)).

44. Therefore, the Motion to Dismiss should be GRANTED and the fraud and negligent misrepresentation claims should be DISMISSED without prejudice to the extent they are based on representations made when executing the Agency Agreement.[3]

## C. Unfair and Deceptive Trade Practices

45. Plaintiff also alleges that Defendants engaged in unfair or deceptive trade practices pursuant to N.C.G.S. § 75-1.1 ("UDTP") by fraudulently inducing Plaintiff to enter the CSA and the Agency Agreement. (*See* Am. Compl. ¶ 71.) To state a UDTP claim, Plaintiff must allege that "(1) defendant committed an unfair and

---

[3] Defendants contend that Plaintiff's reliance on certain statements "is not reasonable." (Defs.' Mem. Supp. 9.) However, the issue of justifiable or reasonable reliance is scarcely discussed in the parties' briefing. Notwithstanding the parties' limited attention to this pleading requirement, the Court, in its discretion, concludes that the failure to plead facts demonstrating justifiable and reasonable reliance is an appropriate ground on which to base its dismissal of Plaintiff's fraud and negligent misrepresentation claims. *See Tuwamo v. Tuwamo*, 248 N.C. App. 441, 445–46 (2016) ("Furthermore, our Supreme Court has noted that '[w]hen the complaint fails to state a cause of action, a defect appears upon the face of the record proper. On appeal, the Supreme Court will take notice of it and will *ex mero motu* dismiss the action.' ").

deceptive act or practice, (2) the act in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656 (2001). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has tendency to deceive." *Id.*

46. Defendants contend that Plaintiff's UDTP claim should be dismissed because breach of contract alone, assuming dismissal of Plaintiff's fraud claim, is an insufficient basis for UDTP claims without "substantially aggravating circumstances"; therefore, Plaintiff's claim fails. (Defs.' Mem. Supp. 12–14.) The Court agrees.

47. It is well established that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992). "[A] plaintiff must show substantial aggravating circumstances attending the breach to recover under the [UDTP] Act[.]" *Id.*

48. From the Court's careful review of the Amended Complaint, the only conduct currently actionable based on the Court's ruling herein is alleged breaches of contract by Defendants, unjust enrichment, and breach of the covenant of good faith and fair dealing. This conduct is insufficient to form the basis of Plaintiff's UDTP claim without allegations of an aggravating circumstance. *See Branch Banking & Tr. Co.*, 107 N.C. App. at 62. The only aggravating circumstance alleged by Plaintiff is purported fraudulent conduct by Defendants. However, the Court has concluded herein that Plaintiff has not adequately alleged this aggravating circumstance.

49. Therefore, the Court concludes that Plaintiff's UDTP claim should be DISMISSED without prejudice.

**D.    Civil Conspiracy**

50. Under North Carolina law, a complaint sufficiently states a claim for civil conspiracy when it alleges "(1) an agreement between two or more individuals, (2) to do an unlawful act or to do a lawful act in an unlawful way, (3) resulting in injury to plaintiff inflicted by one or more of the conspirators, and (4) pursuant to a common scheme." *Elliot v. Elliot*, 200 N.C. App. 259, 264 (2009) (cleaned up). Conspiracy "requires an agreement between at least two persons to take an unlawful action or take a lawful action in an unlawful manner." *Lunsford v. ViaOne Servs., LLC*, 2020 NCBC LEXIS 111, at *17 (N.C. Super. Ct. Sept. 28, 2020).

51. Plaintiff alleges that "Defendants entered into an agreement among themselves to obtain [Plaintiff's] assistance in their business operations without paying for that assistance." (Am. Compl. ¶ 67.) Plaintiff also alleges that Defendants wrongfully terminated their contracts with Plaintiff in order to obtain confidential information to utilize in their business without compensating Plaintiff pursuant to the terms of their contractual relationships. (Am. Compl. ¶¶ 14, 21, 31.)

52. Plaintiff still maintains claims for breach of the CSA and the Agency Agreement, along with claims for unjust enrichment and breach of the covenant of good faith and fair dealing, which are not subject to the Motion. Therefore, the Motion should be DENIED to the extent it requests that that the Court dismiss Plaintiff's claim for civil conspiracy.

## VI. CONCLUSION

53.    For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motion as follows:

A.    The Motion is **DENIED** to the extent it requests that the Court dismiss Plaintiff's claim for breach of the CSA;

B.    The Motion is **GRANTED** to the extent it requests that the Court dismiss Plaintiff's fraud claim, and Plaintiff's fraud claim is **DISMISSED** without prejudice;

C.    The Motion is **GRANTED** to the extent it requests that the Court dismiss Plaintiff's negligent misrepresentation claim, and Plaintiff's negligent misrepresentation claim is **DISMISSED** without prejudice;

D.    The Motion is **GRANTED** to the extent it requests that the Court dismiss Plaintiff's UDTP claim, and Plaintiff's UDTP claim is **DISMISSED** without prejudice; and

E.    The Motion is **DENIED** to the extent it requests that the Court dismiss Plaintiff's claim for civil conspiracy.

**SO ORDERED**, this the 31st day of March, 2021.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
 for Complex Business Cases