Britcher v. Assurance Grp., LLC, 2025 NCBC 68.

STATE OF NORTH CAROLINA

RANDOLPH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV001638-750

JOHN BRITCHER; INDIGO
DILLARD; STEPHEN EBEL; RYAN
FREEMAN; MIKE FURIMSKY;
CANDICE FURIMSKY; CRYSTAL
HUBBS; ADAM HUGGINS;
MADISON KINLAW; JOCELYN
KINLAW; JACOB LAMB; ROBERT
MAZZOLA; TERRY McKAY;
LORAINNA PASSE; NICHOLAS
ROSS; BRANDON SALASSI;
SEAN SPANOS; ALYSIA
SULLIVAN; DYLAN SWEET;
KELLY JO THOMPSON;
and MATTHEW TOOKER,

Plaintiffs,

v.

THE ASSURANCE GROUP, LLC,

Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

**THIS MATTER** is before the Court on Defendant The Assurance Group, LLC's

("TAG") Motion to Dismiss ("Motion to Dismiss" or the "Motion," ECF No. 6).

**THE COURT**, having considered the Motion, the briefs of the parties, the

arguments of counsel, and all appropriate matters of record, **CONCLUDES** that the

Motion should be **DENIED** as moot and **ORDERS** Plaintiffs to file a Second

Amended Complaint in compliance with the Court's instructions below.

*Revolution Law Group, by C. Scott Meyers and Brooks Duane Godbold,
for Plaintiffs.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Kimberly M.
Marston, Robert J. King III, and Susan S. Stutts, for Defendant.*

Davis, Judge.

## INTRODUCTION

1. In the present Motion, the Court must determine whether the complaint filed by the plaintiffs in this action is sufficiently specific to put the defendant on notice of the claims being asserted against it. Based on its conclusion that the existing complaint is impermissibly vague in material respects, the Court will give the plaintiffs an opportunity to file a new complaint that cures the deficiencies that exist in their current pleading.

## FACTUAL AND PROCEDURAL BACKGROUND

2. The Court does not make findings of fact in connection with a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites those facts contained in the complaint (and in documents attached to, referred to, or incorporated by reference in the complaint) that are relevant to the Court's determination of the motion. *See, e.g., Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).

3. Plaintiffs are twenty-one individuals who "were at one time employed by Defendant either as 1099 contractors or as W-2 employees." (Am. Compl. ¶ 3, ECF No. 5.)

4. TAG is a Delaware limited liability company that maintains its principal place of business in Archdale, North Carolina. (Am. Compl. ¶ 4.) TAG acts as an "insurance marketing organization"—serving as an "intermediary between insurance carriers and insurance agents." (Am. Compl. ¶¶ 9–10.) As an intermediary, TAG retains a portion of sales commissions paid out to insurance agents such as Plaintiffs in return for its services. (Am. Compl. ¶ 10.)

5.     As an inducement for new employees, TAG offered them "no-cost sales leads." (Am. Compl. ¶¶ 16–21.) Plaintiffs allege that the "primary benefit and main reason for an agent to join TAG is access to the promised free leads." (Am. Compl. ¶ 19.)

6.     In order to receive these leads, agents like Plaintiffs were required by TAG to sign either TAG's Independent Agent Agreement ("IAA") or a separate document—TAG's "employment agreement."[1] (Am. Compl. ¶¶ 20, 25.) The IAA contained "restrictive covenants prohibiting agents from soliciting customers and other agents," as well as a provision stating that "the contract would automatically terminate if the agent did not sell at least one insurance product in any 60-day period." (Am. Compl. ¶¶ 31–32.)

7.     The provision in the original version of the IAA that required TAG to provide free leads to its agents stated as follows:

> During the term of this Agreement, [TAG] shall:
>
> . . .
>
> 2. Permit the Agent to have access to and use certain of the Company's, or its Affiliates', leads on prospective purchasers of Insurance Products and Services without charge and, if the Agent chooses to pay the Company and/or its Affiliates for the right to use other leads, provide the Agent with the right to use such for-fee leads which the Company and/or its Affiliates own in exchange for Agent's payment of such fees.

(Am. Compl. ¶ 33.)

---

[1] As discussed below, one of the areas of confusion in Plaintiffs' existing pleading is their failure to clearly distinguish between the IAA and the apparently separate and distinct "employment agreement." Instead, they refer to both collectively without providing any meaningful differentiation between the two.

8.      However, in or around the summer of 2023, TAG made "unannounced" and "material changes" to the IAA that were intended to "trim the fat[.]" (Am. Compl., at 6; Am. Compl. ¶¶ 40, 58.)

9.      "First, the automatic termination provision was reduced from 60 days to 30 days." (Am. Compl. ¶ 42.)

10.     Second, the no-cost leads obligation was "deleted[,] . . . stripp[ing] TAG's written contractual obligation to provide free leads to its agents." (Am. Compl. ¶¶ 43–44.)

11.     The provisions that did remain in the IAA, however, included the covenants restricting the solicitation of TAG's customers or other employees. (Am. Compl. ¶ 45.)

12.     Plaintiffs were first put on notice of these changes to the IAA in the summer of 2023 when they were prompted to sign a revised version of the document in order to access TAG's online portal. (Am. Compl. ¶¶ 46–49.)

13.     All Plaintiffs signed the revised IAA in order to (1) maintain access to TAG's online portal so as to continue carrying out their job responsibilities; (2) retain employment that would confer upon them continued eligibility for receipt of sales commissions; and (3) avoid the significant waiting periods that insurance carriers would have required if Plaintiffs were to leave TAG for another insurance intermediary. (Am. Compl. ¶¶ 49, 52–55.)

14.     Subsequently, Plaintiffs all left TAG either voluntarily or involuntarily. (Am. Compl. ¶¶ 59–61.)

15.     TAG subsequently took multiple steps to ensure that Plaintiffs complied

with the restrictive covenants contained within their employment agreements. (Am. Compl. ¶¶ 62–64.)

16. First, TAG sent letters to several of the Plaintiffs reminding them of their obligations under those restrictive covenants. (Am. Compl. ¶ 63.)

17. Second, TAG obtained a preliminary injunction in a related case that is currently pending in this Court—*Assurance Grp., LLC v. Shackelford*, Randolph Cnty. Super. Ct. (25CV000662-750) ("*Shackelford*")—and served copies of the preliminary injunction order on certain Plaintiffs, warning them that they risked violating the order if they had contact with their former clients. (Am. Compl. ¶ 64.)

18. On 22 May 2025, Plaintiffs initiated the present lawsuit by filing a Complaint in Randolph County Superior Court. (ECF No. 3.) Shortly thereafter, on 31 July 2025, Plaintiffs filed an Amended Complaint, which is currently their operative pleading. (ECF No. 5.)

19. This matter was subsequently designated to the Business Court and assigned to the undersigned on 11 August 2025. (ECF Nos. 1–2.)

20. The Amended Complaint asserts claims against TAG for (1) declaratory judgment; (2) violation of the North Carolina Sales Commission Act; and (3) violation of the North Carolina Wage and Hour Act. (Am. Compl., at 14, 19, 21.) In their declaratory judgment claim, Plaintiffs seek a declaration that TAG's employment agreement is unenforceable on the grounds that it is unconscionable, lacks consideration, and is against public policy. (Am. Compl. ¶¶ 88-126.)

21. On 8 August 2025, TAG filed a Motion to Dismiss, Answer to First

Amended Complaint, and Counterclaims.[2]  (ECF No. 6.)

22.     The Court held a hearing on the Motion to Dismiss via Webex on 17 October 2025 at which all parties were represented by counsel.

23.     The Motion has been fully briefed and is now ripe for resolution.

## LEGAL STANDARD

24.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017).  The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]"  *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987).  The Court accepts all well-pled factual allegations in the relevant pleading as true.  *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018).  The Court is not, however, required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).

25.     Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint."  *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016)

---

[2] The Court takes this opportunity to remind counsel that pursuant to Rule 7.2 of the Business Court Rules "[e]ach motion must be filed as a separate document."  BCR 7.2.  TAG's Motion to Dismiss is not in conformity with this Rule as it was contained within the same document containing its Answer and Counterclaims.  Nevertheless, in the Court's discretion and to avoid further delay, the Court will consider the Motion as opposed to requiring TAG to file a new standalone motion.

(cleaned up). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (cleaned up). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (cleaned up).

26. Our Supreme Court has observed that "[i]t is well established that dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up). This standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (cleaned up).

## ANALYSIS

27. In its Motion to Dismiss, TAG makes two arguments. First, it asserts that the Amended Complaint should be dismissed in its entirety because the allegations contained therein are too vague. Second, it contends that the claims of one specific Plaintiff—Lorainna Passe—should be dismissed on the ground that her claims can only be asserted as compulsory counterclaims in the *Shackelford* case.

28. However, the Court need not address TAG's second argument because it agrees that the Amended Complaint as a whole is not pled with sufficient

particularity.

29. Rule 8(a) of the North Carolina Rules of Civil Procedure provides in pertinent part as follows:

> A pleading which sets forth a claim for relief . . . shall contain (1) [a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief, and (2) [a] demand for judgment for the relief to which he deems himself entitled.

N.C. R. Civ. P. 8(a).

30. Rule 8(a) requires North Carolina courts to construe the allegations in a party's pleading liberally. *Gore v. George J. Ball, Inc.*, 279 N.C. 192, 198 (1971). Nonetheless, "[a] mere assertion of a grievance is insufficient to state a claim upon which relief can be granted. Some degree of factual particularity is required." *Alamance Cnty. v. N.C. Dep't of Hum. Res.*, 58 N.C. App. 748, 750 (1982). Thus, "[d]espite the liberal nature of the concept of notice pleading, a complaint must nonetheless state enough to give the substantive elements of at least some legally recognized claim." *Feltman v. City of Wilson*, 238 N.C. App. 246, 252 (2014).

31. Here, the Amended Complaint is deficient in several material respects. First, throughout the document, Plaintiffs engage in what TAG characterizes in its briefs as "group pleading." The Amended Complaint asserts that some of the Plaintiffs were independent contractors and others were employees without specifying which Plaintiffs fall into which category. Similarly, they fail to allege which Plaintiffs are pursuing claims under the North Carolina Sales Commission Act and which are asserting a violation of the North Carolina Wage and Hour Act.

32. Second, as noted above, the Amended Complaint states that certain

agents were subject to an IAA while others were bound by an "employment agreement," but the only substantive terms discussed in the pleading are those purportedly contained in the IAA. Moreover, attached to the Amended Complaint are two "sample" versions of the IAA, but it is unknown which Plaintiffs actually signed which version or, alternatively, whether some Plaintiffs actually signed other versions. And, once again, it is unclear whether the separate "employment agreement" that some of the Plaintiffs apparently signed contains materially different versions of the provisions contained in the IAA that Plaintiffs allege are unenforceable.

33. Finally, the Amended Complaint fails to differentiate between those Plaintiffs who were terminated by TAG and those who left voluntarily.

34. To be sure, a complaint does not need to plead every detail relevant to the claims being asserted. But the problems noted above concern basic factual information that is necessary for a full understanding by both the Court and Defendant of the claims being asserted.

35. This Court's decision in *Baker v. Hobart Fin. Grp.*, 2023 NCBC LEXIS 45 (N.C. Super. Ct. Mar. 22, 2023), is instructive. In *Baker*, a similar scenario existed in which the plaintiffs' complaint lacked clarity and specificity in significant respects. Although the defendant sought dismissal under Rule 12(b)(6) based, in part, on the plaintiffs' use of "impermissible group pleading," 2023 NCBC LEXIS 45 at *4, this Court instead invoked Rule 12(e) and directed the plaintiffs to file a new complaint that would contain clearer allegations of wrongdoing by the defendants.

When an opposing party complains of a pleading's ambiguity, Rule 12(e)

provides the mechanism by which that party can seek a more definite statement before filing a responsive pleading. N.C.G.S. § 1A-1 Rule 12(e). Together with Rule 8, Rule 12(e) guards against vague and ambiguous complaints that impede either the defendants' receipt of adequate notice of the claims asserted against them or their ability to form a responsive pleading. . . .

Although Defendants bring their motion pursuant to Rules 12(b)(6) . . . a presiding judge "is empowered to exercise his discretion in the interest of efficiency, practicality and justice." *Shute v. Fisher*, 270 N.C. 247, 253, 154 S.E.2d 75 (1967); *see also Beard v. The N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694 (1987) ("[t]hrough its inherent power the court has authority to do all things that are reasonably necessary for the proper administration of justice"). It is the Court's opinion that, in this matter, requiring the filing of a Second Amended Complaint that contains a more definite statement is both necessary and appropriate. *See Page v. Mandel*, 154 N.C. App. 94, 571 S.E.2d 635, (2002) (finding no abuse of discretion in the trial court's treating defendants' motion to dismiss, under Rule 12(b)(6)[,] as a motion for a more definite statement, under Rule 12(e), and ordering plaintiff to file a second amended complaint)[.] . . .

[I]t is the Court's opinion that justice and economy would be better served by requiring Plaintiffs to file a Second Amended Complaint that identifies which Plaintiffs bring which causes of action against which Defendants.

*Baker*, 2023 NCBC LEXIS 45, at *8-9.

36. Here, as in *Baker*, although TAG has not formally moved for relief under Rule 12(e), the Court—in the exercise of its discretion—believes that the interests of justice, efficiency, and judicial economy would be furthered by treating TAG's Motion to Dismiss as a request for a more definite and factually specific statement of Plaintiffs' claims under Rule 12(e). *See Page v. Mandel*, 154 N.C. App. 94, 98 (2002) ("[T]he trial court did not err . . . by treating [defendant's] motion to dismiss under Rule 12(b) as a motion for more definite statement under Rule 12(e)." (cleaned up)); *Johnson's Landing Homeowners Ass'n v. Hotwire Commc'ns, LLC*, 2018 NCBC LEXIS

113, at \*12 (N.C. Super. Ct. Oct. 29, 2018) ("[O]n its own motion, the Court directs the [plaintiff] to file a more definite statement of its claim for declaratory judgment on the basis that the [agreements] are void as against public policy.").

37. For these reasons, the Court **DIRECTS** Plaintiffs to file a Second Amended Complaint (within the deadline set out below) that provides the factual particularity that is missing from Plaintiffs' currently operative pleading.

38. As a result, TAG's Motion to Dismiss is hereby **DENIED** as moot.

## CONCLUSION

**THEREFORE**, the Court hereby **ORDERS** as follows:

a. Plaintiffs shall file a Second Amended Complaint on or before 25 November 2025.

b. TAG's pending Motion to Dismiss is **DENIED** as moot.

**SO ORDERED**, this the 4th day of November 2025.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge
for Complex Business Cases