Law Off. of Ashley-Nicole Russell, P.A. v. McLawhorn Legal Servs. PLLC, 2026 NCBC 4.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV028164-910

THE LAW OFFICE OF ASHLEY-NICOLE RUSSELL, P.A. (d/b/a ANR Law), A North Carolina Professional Association, and ASHLEY-NICOLE RUSSELL, an individual,

Plaintiffs,

v.

MCLAWHORN LEGAL SERVICES PLLC, A North Carolina Professional Limited Liability Company, and BENJAMIN T. MCLAWHORN, an individual (d/b/a "The Law Offices of Benjamin T. McLawhorn"),

Defendants.

**ORDER AND OPINION ON DEFENDANTS' AMENDED MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION TO STAY**

1.  **THIS MATTER** is before the Court on the 16 September 2025 filing of *Defendants' Amended Motion to Dismiss and, in the Alternative, Motion to Stay* (the Motion). (ECF No. 10 [Mot.].) Pursuant to Rules 12(b)(6) and 41(b) of the North Carolina Rules of Civil Procedure (the Rule(s)), Defendants seek dismissal of all claims alleged against them by Plaintiffs. (Mot. 1.)

2.  For the reasons set forth herein, the Court **GRANTS** the Motion to the extent it seeks dismissal of the *Complaint* and **DENIES** as moot the Motion to the extent it alternatively seeks a stay of this action.

> *Van Horn Law Firm by Matthew I. Van Horn, for Plaintiffs The Law Office of Ashley-Nicole Russell, P.A. (d/b/a ANR Law) and Ashley-Nicole Russell.*

*Gaskins Hancock Tuttle Hash LLP by E.D. Gaskins, Jr. and Elizabeth R. Harrison, for Defendants McLawhorn Legal Services PLLC and Benjamin T. McLawhorn.*

Robinson, Chief Judge.

## I. INTRODUCTION

3. This action arises out of a soured business relationship between two North Carolina licensed attorneys who are co-owners of a family law practice. Each is also the sole owner of his/her respective individual family law practice. Plaintiffs contend that, throughout the course of a dispute regarding the joint law practice, Defendants have converted Plaintiffs' confidential information and intellectual property, tortiously interfered with their client contracts, and committed computer trespass, all in an attempt to steal Plaintiffs' business.

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact when ruling on a motion to dismiss pursuant to Rule 12(b)(6) and only recites those factual allegations relevant and necessary to the Court's determination of the Motion.

### A. The Parties

5. Plaintiff The Law Office of Ashley-Nicole Russell, P.A. (d/b/a ANR Law) (ANR Law) is a North Carolina professional association with its principal place of business in Wake County, North Carolina. (Compl. ¶ 1, ECF No. 2.)

6. Plaintiff Ashley-Nicole Russell (Ms. Russell; and with ANR Law, Plaintiffs) is an attorney licensed in the State of North Carolina and is the sole owner of ANR Law. (Compl. ¶ 1.)

7.      Defendant McLawhorn Legal Services PLLC (MLS) is a North Carolina professional limited liability company with its principal place of business in Wake County, North Carolina.  (Compl. ¶ 4.)

8.      Defendant Benjamin T. McLawhorn (Mr. McLawhorn), an attorney licensed in the State of North Carolina, is a resident and citizen of Wake County, North Carolina, and is the sole owner of MLS.  (Compl. ¶¶ 2, 4–5.)

### B.      Plaintiffs' Business and Relationship with Defendants

9.      Ms. Russell, through her firm ANR Law, offers family law services to clients throughout eastern North Carolina.  (Compl. ¶ 3.)

10.     Mr. McLawhorn also provides family law services as part of his law practice.[1]  (Compl. ¶ 5.)

11.     In addition to their separate law practices, Ms. Russell and Mr. McLawhorn are equal owners of McLawhorn & Russell, PLLC (M&R), an entity formed by Ms. Russell on 26 September 2019.  (Compl. ¶ 10.)  M&R is a family law practice offering legal services in and around Raleigh, North Carolina.  (Compl. ¶ 10.)

12.     On 22 September 2020, Ms. Russell and Mr. McLawhorn formed Seagality Holdings, LLC (Seagality), through which they purchased an office condominium in Raleigh, North Carolina.  (Compl. ¶ 11.)  Ms. Russell and Mr. McLawhorn subsequently entered into agreements providing that both M&R and ANR Law would

---

[1] Plaintiffs allege, upon information and belief, that Mr. McLawhorn, in addition to providing legal services through MLS, "markets himself and hi[s] family law legal services . . . under a law firm by the name 'The Law Offices of Benjamin T. McLawhorn'[,]" which has neither been organized as an entity under the laws of North Carolina nor registered as an assumed name with the Wake County Register of Deeds.  (Compl. ¶¶ 6–7.)

operate their respective family law practices from the office condominium. (Compl. ¶ 12.) The parties did not enter into any additional agreement authorizing Mr. McLawhorn or MLS to operate separate family law practices from the office condominium. (Compl. ¶ 13.)

**C.     The Related Lawsuit and Arbitration[2]**

13.     At some point a dispute arose between Ms. Russell and Mr. McLawhorn regarding the operations of M&R. (Compl. ¶ 14.)

14.     On 19 January 2024, as a result of this dispute, Ms. Russell commenced a lawsuit against Mr. McLawhorn and Seagality in Wake County Superior Court. *See Russell v. McLawhorn* (Wake Cnty., 24CV002218-910), (*Russell*). In that action, Ms. Russell asserted claims against Mr. McLawhorn and Seagality for breach of contract and violation of N.C.G.S. § 57D-3-21. (*See Russell*, ECF No. 5.)

15.     Subsequently, Ms. Russell initiated an arbitration proceeding pursuant to an arbitration agreement contained in the operating agreements of M&R and Seagality. (*See* Complainant's Am. Stmt. Claim, ECF No. 11.1 [Stmt. Claim].)[3] In the arbitration, Ms. Russell asserted claims for breach of Seagality's and M&R's respective operating agreements, breach of fiduciary and statutory duties, unjust enrichment, conversion, trespass, judicial dissolution, accounting, declaratory

---

[2] While the Court notes that the *Complaint* does not include allegations or references to the related litigation, the Court sets forth a limited factual background of that action as context for Defendants' contention that Plaintiffs' claims in this matter may be barred by the prior pending action doctrine.

[3] Ms. Russell's arbitration complaint was attached as Exhibit 1 to Defendants' brief in support of the Motion.

judgment, assault and battery, temporary restraining order, and preliminary injunction. (*See generally* Stmt. Claim.)

**D.** **Actions Giving Rise to Current Litigation**

16. Plaintiffs complain that throughout the duration of the dispute between Ms. Russell and Mr. McLawhorn over the operations of M&R, Mr. McLawhorn (i) froze Ms. Russell out of the business of M&R and prevented her from participating in the operations and profits of M&R; (ii) blocked Ms. Russell from entering the shared office condominium; (iii) directed Plaintiffs' clients to himself and M&R; and (iv) engaged in the removal of Plaintiffs' records, confidential information, and intellectual property. (*See* Compl. ¶¶ 15–18.)

## III. PROCEDURAL BACKGROUND

17. On 14 August 2025, Plaintiffs initiated this action upon the filing of the *Complaint*. (ECF No. 2.)

18. On 5 September 2025, Defendants filed *Defendants' Motion to Dismiss and, in the Alternative, Motion to Stay*. (ECF No. 7.)

19. Following designation of this action to the North Carolina Business Court, Defendants filed the Motion.

20. The Court initially scheduled a hearing on the Motion to take place on 15 December 2025. (*See* ECF No. 33.) Because Plaintiffs' counsel had a scheduling conflict involving a trial in an unrelated matter, the Court subsequently cancelled the hearing. (*See* ECF No. 41.) As no party has suggested in either the Motion or briefing

that oral argument is necessary, the Court, in its discretion, elects to determine the Motion without a hearing pursuant to Business Court Rule 7.4.

21. The Motion is ripe for resolution.

## IV. LEGAL STANDARD

22. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the *Complaint* in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987) (citation omitted). The Court accepts all well-pleaded factual allegations in the relevant pleadings as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 174 N.C. App. 266, 274 (2005) (citation modified).

23. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citation omitted). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.*

24. Our Supreme Court has observed that "[i]t is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citations omitted). This standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (citations omitted).

## V. ANALYSIS

25. Defendants move to dismiss all of Plaintiffs' claims against them, which include: (1) unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 *et seq.* (Compl. ¶¶ 24–31), (Count One); (2) tortious interference with contract (Compl. ¶¶ 32–40), (Count Two); (3) conversion (Compl. ¶¶ 41–48), (Count Three); (4) computer trespass in violation of N.C.G.S. §§ 14-458 and 1-539.2A (Compl. ¶¶ 49–52), (Count Four); (5) constructive trust and appointment of receiver (Compl. ¶¶ 53–57), (Count Five); and (6) punitive damages (Compl. ¶¶ 58–60), (Count Six). The Court will address each claim in turn.

### A. Count One: Unfair and Deceptive Trade Practices

26. Plaintiffs allege that Defendants' conduct constitutes a violation of Chapter 75 of the North Carolina General Statutes (UDTPA) in that they "use[d] proprietary company information, assets, intellectual property and the goodwill

established by the Plaintiff for the Defendants' sole benefit." (Compl. ¶ 27.) Specifically, Plaintiffs allege Defendants have violated the UDTPA by obscuring, concealing, and misrepresenting "the true nature of their behavior to steal the Plaintiff's Raleigh family law practice, and all its related assets[.]" (Compl. ¶¶ 27–29.)

27. "To prevail on a claim of unfair and deceptive trade practice a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing, Inc. v. Pollard*, 101 N.C. App. 450, 460–61 (1991) (citing *Marshall v. Miller*, 302 N.C. 539 (1981)).

28. The UDTPA provides, in pertinent part, that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a). Further, the UDTPA defines "commerce" to include "all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b).

29. "North Carolina courts have previously concluded that when the UDTP[A] claim rests solely upon other claims . . . which the court determines should be dismissed, the UDTP[A] claim must fail as well." *Charah, LLC v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 52, at *19 (N.C. Super. Ct. Apr. 17, 2020).

30. Defendants argue that the UDTPA claim fails because it is based on the same alleged conduct underlying the conversion and tortious interference claims,

which Defendants contend must be dismissed pursuant to Rule 12(b)(6).  (Defs.' Br. Supp. Mot. & Mot. Quash 13, ECF No. 11 [Br. Supp.].)  Defendants also argue the claim fails under the learned profession exemption.  (Reply Br. Supp. Mot. & Mot. Quash 4, ECF No. 27 [Reply].)[4]

31.  Plaintiffs contend that Defendants' acts of "misleading clients, misrepresenting firm identity, and exploiting confidential data of M&R and ANR Law constitutes unfair and deceptive trade practices[.]"  (Pls.' Br. Opp'n Mot. 6, ECF No. 21 [Br. Opp'n].)  Additionally, Plaintiffs assert that Mr. McLawhorn's alleged violation of Rule 7.1 of the North Carolina State Bar Revised Rules of Professional Conduct (RPC) in offering legal services under a name that has neither been organized as an entity or registered as an assumed name, while not in itself giving rise to civil liability, supports the contention that Defendants' acts were misleading and deceptive.  (Br. Opp'n 6–7.)  Further, Plaintiffs argue the tortious interference claim supports the UDPTA claim.  (Br. Opp'n 8.)

32.  Upon review of the *Complaint*, Count One appears to be based on precisely the same facts supporting Plaintiffs' claims for tortious interference, computer

---

[4] Defendants raised this argument for the first time in reply and, therefore, it need not be considered.  *See* BCR 7.7.  The Court notes, however, that there is a serious question as to whether Defendants' conduct falls within the learned profession exemption.  *See In re Se. Eye Ctr.-Pending Matters*, 2019 NCBC LEXIS 29, at \*180–81 (N.C. Super. Ct. May 7, 2019) ("[A]n attorney's rendering of legal services to another cannot provide a basis for an unfair or deceptive trade practices claim[.]" (citing *Moch*, 251 N.C. App. at 208–09)); *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC LEXIS 30, at \*48 (N.C. Super. Ct. Mar. 25, 2015) (holding the learned profession exemption applies where the alleged conduct in support of the UDTPA claim involves the sort of professional services "often carried out by law firms or attorneys" (quoting *Reid v. Ayers*, 138 N.C. App. 261, 266 (2000))).  Nevertheless, as the Court concludes herein that Count One fails on other grounds, the Court need not reach the question of whether the learned profession exemption applies.

trespass, and conversion. As the Court concludes herein, *infra* paragraphs 42, 50, and 59, that Plaintiffs' allegations are insufficient to support a claim for tortious interference with contract, conversion, or computer trespass, the allegations are likewise insufficient to state a UDTPA claim as to that same conduct.

33. Accordingly, the Court hereby **GRANTS** the Motion as to Count One, and Count One for violation of the UDPTA is dismissed with prejudice.[5]

B. **Count Two: Tortious Interference with Contract**

34. Plaintiffs bring Count Two for tortious interference with contract against both Defendants, alleging that (i) "Plaintiff" has valid, enforceable agreements with its clients relating to compensation for legal representation; (ii) Defendants knew of the agreements between "Plaintiff" and its clients; (iii) Defendants "intentionally attempted to induce and have induced the Plaintiff's clients to directly and materially breach their respective agreements[;]" and (iv) Defendants acted with malice and caused actual monetary harm to "the Plaintiff." (Compl. ¶¶ 33–35, 37–38.)

35. Specifically, Plaintiffs allege that "Defendants have sought and continue to seek to conceal the true nature of Defendants' unlawful theft, [and] conversion, of the Plaintiff's confidential existing clients and prospective clients, accounts, client lists, intellectual property, corporate policies, marketing strategy, products, processes, techniques, and services, to induce Plaintiff's clients to breach their agreements[.]" (Compl. ¶ 36.)

---

[5] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*¸ 230 N.C. App. 187, 191 (2013).

36.     Defendants argue the tortious interference claim fails because the *Complaint* does not include any allegation of specific actions taken by Defendants to induce Plaintiffs' clients to breach their respective agreements and fails to foreclose any motive for interference other than malice.  (Br. Supp. 10.)   Additionally, Defendants contend the tortious interference allegations are deficient as "Plaintiffs fail to identify a single contract between Plaintiffs and a client that has not been performed allegedly as the result of Defendants' actions."  (Br. Supp. 11.)

37.     To state a claim for tortious interference with contract, a plaintiff must allege the following: (1) a valid contract exists between the plaintiff and a third person; (2) the defendant knows of the contract between plaintiff and the third party; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant in doing so acts without justification; and (5) the interference results in actual damage to the plaintiff.   *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988) (citing *Childress v. Abeles*, 240 N.C. 667 (1954)).   "The pleading standards for a tortious interference with contract claim are strict." *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *15 (N.C. Super. Ct. Feb. 8, 2017); *see also Wells Fargo Ins. Servs. USA, Inc. v. Link*, 2018 NCBC LEXIS 42, at *47 (N.C. Super. Ct. May 8, 2018); *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *16 (N.C. Super. Ct. Mar. 27, 2017).

38.     As an initial matter, the allegations in the *Complaint* as to Count Two are deficient in that the Court is unable to discern from the plain language of the allegations which firm's—ANR Law's or M&R's—client contracts have been allegedly

wrongfully interfered with by Defendants. Specifically, the *Complaint* alleges that "*Plaintiff* had and continues to have valid agreements with *its* clients." (Compl. ¶ 33 (emphasis added).) As neither Ms. Russell nor ANR Law has been defined in the *Complaint* as the singular noun "Plaintiff," the Court must infer from the use of the possessive "its" that the allegations refer to the entity ANR Law and its clients.

39. However, in their response brief, Plaintiffs argue that "[a]s a 50% shareholder in M&R Law Firm, [Ms.] Russell had a direct interest in the firm's client contracts. Defendants' solicitation of those clients—without [Ms.] Russell's consent and under false pretenses—constitutes intentional interference." (Br. Opp'n 4.) Plaintiffs further represent that they have been damaged because they had (a) no opportunity to discuss the solicitation of M&R clients by MLS and (b) ANR Law received no income from the solicited clients. (Br. Opp'n 4.) Thus, it is apparent from the arguments in the brief that Plaintiffs intended to bring Count Two against Defendants for alleged interference with M&R's client contracts.

40. The first element of a tortious interference claim under North Carolina law is the existence of a valid contract between the *plaintiff* and a third person. *See United Labs.*, 322 N.C. at 661. ANR Law, therefore, may not bring a tortious interference claim based on alleged interference by either Defendant with M&R's contracts. Additionally, despite the fact that Ms. Russell is a 50% owner of M&R, because Count Two is based on alleged interference with M&R's client contracts, the claim is M&R's to bring. Because M&R is not a party to this action and Ms. Russell does not purport to bring this lawsuit as a derivative action on behalf of M&R,

Ms. Russell may likewise not sustain a claim for tortious interference with M&R contracts.

41.     Further, to the extent ANR Law is purporting to bring this claim against Defendants for interference with its own contracts with clients, the Court concludes that the allegations in the *Complaint* are still insufficient in that they are vague, conclusory, and do not put Defendants on sufficient notice as to how Defendants have allegedly induced clients to breach their contracts or what contracts have, in fact, been breached by clients.

42.     Therefore, the Court **GRANTS** the Motion as to Count Two for tortious interference with contract, and Count Two is dismissed with prejudice.

### C.     Count Three: Conversion

43.     Plaintiffs bring Count Three for conversion against both Defendants, alleging that they have "unlawfully converted Plaintiffs' confidential existing clients and prospective clients, accounts, client lists, intellectual property, corporate policies, marketing strategy, products, processes, techniques, and services by inducing Plaintiffs' clients to breach their agreements with Plaintiffs[,]" and that Defendants continue to use the same to solicit Plaintiffs' clients and steal their business. (Compl. ¶¶ 45–46.)

44.     Defendants contend the conversion claim fails because none of the items listed in the *Complaint* are goods or tangible personal property that may be the subject of a conversion claim, and Plaintiffs do not allege that Defendants assumed

and exercised ownership over the items to the alteration of their condition or the exclusion of Plaintiffs' rights. (Br. Supp. 11–12.)

45. Under North Carolina law, the two essential elements necessary in a claim for conversion are: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant. *Steele v. Bowden*, 238 N.C. App. 566, 574 (2014). "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner[.]" *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86 (2008) (citation modified).

46. A claim for conversion applies only to goods or personal property and does not extend to real or intangible property. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414 (2000); *Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at *5–6 (N.C. Super. Ct. Aug. 7, 2017). This Court has recognized that the weight of authority "treats electronic documents as personal property subject to a claim for conversion." *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51, at *16 (N.C. Super. Ct. June 9, 2017) ("It would make little sense to foreclose recovery for the wrongful deprivation of electronic information when taking the same information printed into hard copy form would be sufficient." (citation modified)).

47. Notwithstanding the Court's determination in *Addison Whitney* that electronic documents may be the subject of a conversion claim, "retention by a wrongdoer of an electronic copy in a manner that does not deprive the original owner of access to the same . . . cannot constitute conversion under current North Carolina

law." *Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply Co.*, 2018 NCBC LEXIS 2, at \*36 (N.C. Super. Ct. Jan. 2, 2018); *see also Addison Whitney*, 2017 NCBC LEXIS 51, at \*19–20 (dismissing conversion claim where allegations related to electronic copies of documents the plaintiff still had in its possession).

48. With respect to Plaintiffs' allegations that Defendants converted confidential existing clients and prospective clients, accounts, marketing strategy, processes, techniques, and services, those items do not amount to goods or tangible personal property and, therefore, may not be the subject of a conversion claim. *See Norman*, 140 N.C. App. at 414.

49. As for client lists, corporate policies, and the general reference to "intellectual property," the *Complaint* does not expressly state whether such information constitutes tangible or intangible personal property and, thus, the Court cannot discern from the face of the *Complaint* whether such property can support a conversion claim under North Carolina law. Further, it is unclear to the Court what "products" the *Complaint* refers to. However, regardless of whether these items may conceivably be the subject of a conversion claim, Plaintiffs have failed to allege that Defendants deprived or excluded Plaintiffs of use of any such property and, therefore, have failed to state a proper claim for conversion.

50. Therefore, the Court **GRANTS** the Motion as to Count Three, and Count Three is dismissed with prejudice.

## D.    Count Four: Computer Trespass

51.    Plaintiffs bring Count Four for computer trespass against both Defendants, alleging that they individually and collectively "entered onto Plaintiff's computer(s) and/or computer network without the authority of the Plaintiffs" with the intent to make or cause to be made "unauthorized copies of Plaintiff's confidential existing clients and prospective clients, accounts, client lists, intellectual property, corporate policies, marketing strategy, products, processes, techniques, and services." (Compl. ¶¶ 50–51.)

52.    Pursuant to N.C.G.S. § 14-458(a), it is unlawful

> for any person to use a computer or computer network without authority
> and with the intent to do any of the following:
>
> . . .
>
> (5) Make or cause to be made an unauthorized copy, in any form,
> including, but not limited to, any printed or electronic form of
> computer data, computer programs, or computer software
> residing in, communicated by, or produced by a computer or
> computer network.

53.    The statute defines "without authority" to include when "the person has no right or permission of the owner to use a computer, or the person uses a computer in a manner exceeding the right or permission[.]"  N.C.G.S. § 14-458(a).

54.    Defendants contend Count Four fails because the *Complaint* does not identify any computer or computer network allegedly owned by Plaintiffs and used by Defendants without authority that could form the subject of the computer trespass claim.  (Br. Supp. 14.)  Defendants also note that the *Complaint* is devoid of any allegation regarding when the alleged trespass took place, where such computer or

computer program was located at the time of the alleged trespass, or how Plaintiffs were allegedly damaged by the alleged computer trespass. (Br. Supp. 14.)

55. The Court notes that there is a stark disparity between what is alleged in the *Complaint* and what is argued in Plaintiffs' brief in opposition to the Motion. The *Complaint* alleges, in relevant part, that Defendants accessed "Plaintiff's" computer or computer network and made copies of "Plaintiff's" confidential information. (*See* Compl. ¶¶ 50–51.) However, Plaintiffs contend in their brief that "Defendants accessed confidential client data stored in M&R's systems—systems co-managed by Ms. Russell." (Br. Opp'n 8.)

56. Pursuant to N.C.G.S. § 1-539.2A(a), "[a]ny person whose property or person is injured by reason of a violation of [N.C.]G.S. 14-458 may sue for and recover any damages sustained and the costs of the suit."

57. The allegations in the *Complaint* are vague and conclusory at best. The use of the singular "Plaintiff" leaves the Court and, presumably, Defendants guessing as to whether the computer and/or computer program allegedly accessed by Defendants is owned by Ms. Russell, in her individual capacity, or ANR Law. To add to the confusion, Plaintiffs' opposition brief indicates that Plaintiffs intend to bring this claim against Defendants for the alleged computer trespass of M&R's computer system.

58. As the Court previously observed, *supra* paragraph 40, M&R is not a party to this action, and ANR Law may not sustain a claim against Defendants for trespass to M&R's property. Further, even if Ms. Russell could sustain a claim against

Defendants for trespass to M&R's computer systems—which is not the case as Ms. Russell has not brought the claim derivatively—the *Complaint* does nothing more than allege the elements of a computer trespass claim in a conclusory manner.

59. Therefore, the Court hereby **GRANTS** the Motion as to Count Four, and Count Four is dismissed with prejudice.

**E.** **Count Five: Constructive Trust and Appointment of Receiver**

60. Plaintiffs, through Count Five, request that the Court appoint a receiver "to receive and hold in trust any and all past, current and future revenues, receipts, and income of the Defendants from business transactions that include or are derived from Plaintiff's confidential existing clients and prospective clients, accounts, client lists, intellectual property, corporate policies, marketing strategy, products, processes, techniques, and services." (Compl. ¶ 57.)

61. "[A] constructive trust is not a standalone claim for relief or cause of action." *LLG-NRMH, LLC v. N. Riverfront Marina & Hotel, LLLP*, 2018 NCBC LEXIS 105, at *14 (N.C. Super. Ct. Oct. 9, 2018) (citing *Weatherford v. Keenan*, 128 N.C. App. 178, 179 (1997)). Likewise, appointment of a receiver pursuant to N.C.G.S. §§ 55-14-32 and 1-502(1) is a remedy, not a claim. *Johnston v. Johnston Props., Inc.*, 2018 NCBC LEXIS 119, at *41 (N.C. Super. Ct. Nov. 15, 2018) (citing *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *29 (N.C. Super. Ct. Oct. 2, 2017).

62. Therefore, the Court hereby **GRANTS** the Motion as to Count Five and, because Plaintiffs have failed to allege a viable claim for relief, Count Five for constructive trust and appointment of receiver is dismissed with prejudice.

**F.**     **Count Six: Punitive Damages**

63. "North Carolina courts have repeatedly held that 'a claim for punitive damages is not a stand-alone claim.'" *Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 116, at \*146 (N.C. Super. Ct. Dec. 31, 2019) (quoting *Funderburk v. JPMorgan Chase Bank, N.A.*, 241 N.C. App. 415, 425 (2015)).

64. Accordingly, the Court hereby **GRANTS** the Motion as to Count Six and, as Plaintiffs have failed to allege a viable claim for relief, Count Six for punitive damages is dismissed with prejudice.

## VI.    CONCLUSION

65. For the foregoing reasons, the Court hereby **GRANTS** the Motion. As the Court dismisses all claims alleged in the *Complaint*, the alternative request for a stay of this matter is hereby **DENIED** as moot.

    **IT IS SO ORDERED**, this the 21st day of January, 2026.

/s/ Michael L. Robinson
Michael L. Robinson
Chief Business Court Judge